Maxell R. and Josephine M. Lenington v. Commissioner.
Lenington v. Commissioner
Docket No. 775-64.
United States Tax Court
T.C. Memo 1966-264; 1966 Tax Ct. Memo LEXIS 20; 25 T.C.M. (CCH) 1350; T.C.M. (RIA) 66264; December 6, 1966
Maxell R. Lenington and Josephine M. Lenington, pro *21 se, Harlowton, Mont. Walter John Howard, Jr., for the respondent. DAWSON
Memorandum Opinion DAWSON, Judge: Respondent determined a deficiency in petitioners' income tax for the year 1962 in the amount of $197. Petitioners claim an overpayment of $81.60 for that year. Petitioners did not allege errors in their petition as to several of respondent's adjustments to their claimed expense deductions. One adjustment pertaining to accident insurance of $6 was first questioned by petitioners in their memorandum brief, and we regard it as raised untimely. However, the petitioners claimed in their petition a deduction for automobile expenses which had not been taken on their tax return and which deduction respondent now contests. Thus seven issues remain for our decision. They are: 1. Are petitioners entitled to deduct automobile expenses incurred in traveling to and from work? 2. Are petitioners entitled to deduct automobile expenses incurred in using their car for the benefit of the husband's employer? 3. Are petitioners entitled to a deduction for a fee paid to an attorney for representing their son when he was charged with malicious destruction of property? 4. *22 Can petitioners deduct, as child care expense, amounts paid to two of their dependent children for "babysitting" a younger child while petitioners were away from home at their respective places of employment? 5. Can petitioners deduct amounts paid for the installation of a telephone line and for telephone service which they allege was necessary to seek employment? 6. Are petitioners entitled to deduct the insurance premium on poultry buildings which were for sale? 7. Can petitioners deduct depreciation on poultry buildings after they ceased operating their poultry business but while the buildings were for sale? The facts in this case have been fully stipulated by the parties and are adopted as our findings. Maxell R. and Josephine M. Lenington (hereinafter sometimes called petitioners) are husband and wife who reside near Harlowton, Montana. They filed a joint Federal income tax return for the taxable year 1962 with the district director of internal revenue at Helena, Montana. On their tax return for the year 1962 the petitioners reported gross income of $4,626.44 which was itemized as follows Bartending
$3,034.52
Bookkeeping
1,227.92
Unemployment compensation
364.00
Total
$4,626.44
*23 Their Withholding Tax Statements, Form W-2, attached to the 1962 return showed total wages of $4,574.76 [1] and withheld income tax of $81.60 which was itemized as follows: Total
Income Tax
Employer
Employee
Wages
Withheld
Biegel's Bar
Maxell R. Lenington
$1,139.70
Loyal Order of Moose Lodge 1546
Maxell R. Lenington
2,248.25
$81.60
Tooley-Moore Insurance Agency
Josephine M. Lenington
1,186.81
Totals
$4,574.76
$81.60
The parties agree that unemployment compensation in the amount of $364 which was reported on the 1962 return is not subject to tax. In addition, respondent has allowed a deduction for the repayment of wages for substitute employments of others in the amount of $166.03 resulting in a reduction of reported income of $217.71. This is computed as follows: Total wage income
$4,574.76
Deduct: Repayment of
wages for substitute
employment of others
166.03
$4,408.73
Reported wage income
4,626.44
Reduction in wage income
($217.71)
*24 Petitioners live approximately three miles from the city limits of Harlowton and formerly conducted a poultry business there. Such business was discontinued in 1960. The parties stipulated the contention of petitioners as to the reason their poultry business was terminated as follows: Because our Government illegally, unconstitutionally and unjustly favored the wheat farmer by paying him a high subsidy, while that favoritism destroyed their poultry business, their means of livelihood, their children's means of livelihood, their children's college education, and their children's heritage. They are still poultry farmers and would still be making their living from their chosen lifetime occupation had they not been victimized by their Government. 1. Automobile commuting expenses. Maxell was employed during 1962 as a bartender at the Loyal Order of Moose Lodge 1546 and on various occasions at Biegel's Bar, both of which were located in Harlowton about 3 miles from his home. Josephine was employed in 1962 as a bookkeeper by the Tooley-Moore Insurance Agency in Harlowton. On their income tax return for that year they deducted $632.15 which represented $497.94 in car and gasoline expenses *25 and $134.21 in car insurance. They claimed these amounts as the expense of going to and from their respective places of employment. These are expenses of commuting to work and relate to petitioners' pattern of living, not the requirements of their respective jobs. Commuting expenses have always been treated as nondeductible personal expenses, and as such must be disallowed. Commissioner v. Flowers, 326 U.S. 465 (1946); Arthur Sansone, 41 T.C. 277, 289 (1963); and Beatrice H. Albert, 13 T.C. 129, 131 (1949). 2. Other automobile expenses. Petitioners claim a deduction of $78 for automobile expenses which had not been deducted on their 1962 return. They assert that such amount represents wear and tear to their car during the course of Maxell's employment as he made trips to their farm to put ice cubes in their poultry freezer, such ice being needed by the Moose Lodge on weekends. Petitioners have not met their burden of proof with respect to this issue. They have not substantiated the amount of alleged expenses incurred on these trips; they have not shown that the storing of ice cubes was their employer's ordinary and necessary business expense; *26 and they have not shown that they were not reimbursed for such amounts. See Maude Enella Brickell, 17 B.T.A. 711, 713 (1929); L. F. Ratterman 7 T.C.M. 476, 493 (1948), affirmed per curiam 177 F. 2d 204 (C.A. 6, 1949); and Coplon v. Commissioner, 277 F. 2d 534 (C.A. 6, 1960). 3. Legal expense. Petitioners employed an attorney to represent their son when he was charged with malicious destruction of property. The charge was dropped and petitioners paid the attorney $10 for his services. They deducted this amount on their 1962 income tax return. To be deductible, legal expenses must either be ordinary and necessary business expenses within the meaning of section 162(a), Internal Revenue Code of 1954, or bear a relation to the management of property held primarily for the production of income under section 212. Cf. Commissioner v. Tellier, 383 U.S. 687 (1966); Bingham's Trust v. Commissioner, 325 U.S. 365 (1945); and Julian D. Freedman, 35 T.C. 1179 (1961). Here, however, the legal expense bears no relation to any business or income producing activity of the petitioners *27 and is clearly a nondeductible personal expense. 4. Child care expense. On their tax return petitioners claimed a deduction of $19.85 for child care. In their petition they claimed that the correct amount for child care was $27.10. This is alleged as the amount paid to two of their dependent children for babysitting with a younger child while the petitioners were at their respective places of employment. Section 214, Internal Revenue Code of 1954, allows, under certain circumstances, the deduction of expenses for child care. However, section 214(b)(3) provides that the deduction: shall not apply to any amount paid to an individual with respect to whom the taxpayer is allowed for his taxable year a deduction under section 151 (relating to deductions for personal exemptions). The parties stipulated that the children who were paid as babysitters were dependents of petitioners. The petitioners also claimed, and were allowed, personal exemption deductions for three children on their 1962 tax return. Since there is no evidence that the children paid as babysitters were not among those taken as personal exemptions, the petitioners have not met their burden of *28 showing that section 214(b)(3) does not bar the deduction claimed. 5. Telephone expenses. On their tax return the petitioners deducted $46.40 paid for the installation of a telephone line and for telephone service. While they claim that the telephone was necessary to obtain employment in Harlowton and to ascertain the time for reporting to such jobs, there is no evidence that this was the only reason for maintaining such service or how much the telephone was used for business rather than personal purposes. Since the burden of proof rests with petitioners and there is an absence of evidence as to business use of the telephone, other than general allegations contained in the petition and denied in respondent's answer, all of the claimed deduction must be disallowed. Broughton v. Commissioner, 333 F. 2d 492 (C.A. 6, 1964); Louis Halle, 7 T.C. 245 (1946), affd. 175 F. 2d 500 (C.A. 2, 1949). 6. Insurance on poultry buildings. Petitioners deducted insurance premiums of $80.54 as a business expense. They now claim that the proper amount of insurance premium to be deducted in 1962 is $14.34, i.e., the amount attributable to the poultry buildings. *29 Petitioners were in the poultry business prior to 1960. In that year they ceased operating the business because of the high cost of wheat needed to feed the poultry. The poultry buildings were then put up for sale. During the time of purchase or construction of a capital asset, or of its sale, insurance premiums either paid by a business or paid as part of an income-producing activity to insure that asset against some casualty are treated as capital expenditures. Herbert Shainberg, 33 T.C. 241, 251 (1959); Higgins v. United States, 75 F. Supp. 252, 255 (Ct. Cl. 1948). Since the poultry buildings were for sale during 1962, the cost of the insurance must be treated as a nondeductible capital expenditure. 7. Depreciation on poultry buildings. On their 1962 tax return, the petitioners deducted depreciation on their poultry buildings in the amount of $277.08. These buildings had not been used in their poultry business since 1960. However, they apparently were not abandoned or converted to personal use by petitioners in the period through 1962, but were held for sale by them in the termination or cessation of their poultry business. Section 167(a)(1), Internal Revenue Code *30 of 1954, allows deductions for depreciation of property "used in the trade or business." This language has been interpreted to mean "devoted to the trade or business" and includes all such property, whether actually in use during the taxable year or not. Yellow Cab Co. of Pittsburgh v. Driscoll, 24 F. Supp. 993 (W.D. Pa. 1938); Carter-Colton Cigar Co., 9 T.C. 219 (1947); and Graves Brothers Co., 17 T.C. 1499 (1952). Since the poultry buildings were not abandoned or converted to personal use prior to 1962, but were involved in a discontinuance of the active conduct of the poultry business, their previously established character as business property was not changed. Graves Brothers Co., supra; and Alfred Kruse, 29 T.C. 463 (1957). This is true even though the petitioners intended to sell such property after the discontinuance of business operations. Solomon Wright, Jr., 9 T.C. 173 (1947). Consequently, we hold that the petitioners are entitled to deduct for 1962 the depreciation claimed on their poultry buildings under the provisions of section 167(a)(1). We have carefully considered petitioners' Exhibit *31 1 (Statement of Facts and the attached statement for $354,000 to the United States Treasury Department), Exhibit 2 (the so-called "Articles of Truth" and "Petition to U.S. Congress") and their memorandum brief. The substance of their position seems to be that: The evidence already submitted proves we were victimized of our poultry business by our Government's illegal actions. Thus; until the Government pays us for our business they destroyed, with God as our witness, we do not feel we should ever again pay any more tax. We pray the Judge will rule in this manner. When we have been paid for our destroyed business, then, and then only, would it be proper and just for us to pay any tax. In Abraham J. Muste, 35 T.C. 913, 919 (1961), a somewhat similar argument was answered when this Court said that there is "no doubt as to the sincerity of the petitioner's beliefs, but in our opinion he does not have the right to refuse to comply with the law, even though the policies of the Federal Government and the manner of expenditure of its revenues may not accord with the dictates of his conscience." Moreover, most of what the petitioners have written is either misdirected or irrelevant *32 as to issues involved because "ours is not a court of equity - only a court of law." Mark R. Harding 46 T.C. 502, 505 (1966). To reflect the conclusions reached herein, Decision will be entered under Rule 50. Footnotes
1. The parties stipulated that the 1962 return showed total wage income of $4,655.26. We have recomputed these items and find total wages of $4,574.76. This latter figure has been used in all subsequent computations involving total wages for 1962.↩