*An appropriate order will be entered.*

MARK R. HARDING AND AUDREY E. HARDING, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 1589-65.  Filed July 18, 1966.

Mark R. Harding and Audrey E. Harding, pro se.
*John W. Tissue,* for the respondent.

OPINION

DAWSON, *Judge:* Respondent determined a deficiency in income tax against the petitioners for the taxable year 1963 in the amount of $726.88. Petitioners claim an overpayment, which apparently has not been refunded, for the same year in the amount of $755.39.

The only issue for decision is whether the petitioners are entitled to deduct as a medical expense under section 213, I.R.C. 1954, a loss of $6,546.78 sustained on the sale of their personal residence in Uniontown, Pa.

All of the facts in this proceeding have been stipulated by the parties and are hereby adopted as our findings.

Mark R. and Audrey E. Harding (hereinafter sometimes called petitioners) are husband and wife who presently reside in western Pennsylvania. They filed their joint Federal income tax return for the year 1963 with the district director of internal revenue in that area.

Prior to September 1962, the petitioners resided in Uniontown, Pa., where they owned a personal residence which was sold on October 5, 1963, at a loss of $6,546.78.

The petitioners are parents of a minor daughter and an adult son.

While living in Uniontown, the petitioners' daughter was subjected to taunts and rejection by schoolmates because of community knowledge of a family history of von Recklinghausen's disease. Such disease, also known as neurofibromatosis, is a noncommunicable congenital disorder characterized by the development of multiple tumors which can result in disfigurement. Although it may be transmitted from generation to generation, the skipping of generations or abortive or partial formation may occur. The last manifestation of the disease in the family was the petitioner-husband's father, who died in 1947 at the age of 66. He was disfigured by the disease. Neither the petitioner-husband nor his daughter has any evidence of the disease; nor does their adult son, who is now in military service with the U.S. Air Force.

The child was taunted in the schoolyard. In school her classmates refused to sit near her or to touch papers she had handled. She was also subjected to physical abuse by schoolmates, often returning home from school bruised and scratched, with her clothing damaged and soiled although she had left for school uninjured and clean.

Petitioners consulted a psychiatrist because of fear that constant ostracism was seriously affecting the child. The psychiatrist recommended that the family move from Uniontown to avert serious psychological damage to the child and to avoid the risk of a mental breakdown of her and the petitioner-wife.

In January 1962, the petitioners engaged an attorney to petition the Court of Common Pleas of Fayette County, Pa., to change their surname. When the attorney learned that they were motivated by the ostracism in the community resulting from the family history of von Recklinghausen's disease, he advised them to move from that vicinity. On March 21, 1962, a court decree was entered changing the surname of petitioners and their children.

In September 1962, the petitioners moved from Uniontown. The husband was able to continue working for the same employer, but suffered a reduction in income as a result of the move.

In their income tax return for 1963 the petitioners claimed a loss on the sale of their personal residence in Uniontown as a medical deduction, computed as follows:

| | |
|---|---|
| Cost of home, purchased in 1950 | $4,000.00 |
| Remodeling costs, including addition of rooms and basement | 11,046.78 |
| Total | 15,046.78 |
| Sales price, October 1963 | 8,500.00 |
| Loss claimed as deduction | 6,546.78 |

Respondent disallowed the claimed medical deduction in his notice of deficiency dated December 31, 1964.

Two factors which contributed to the loss were: (1) The improvements made by petitioners to such property increased the cost thereof to an amount substantially exceeding the average cost of houses in the same area, and (2) a general decrease in the market value of houses in the community attributable to an economic decline.

Deductions for medical expenses, like other allowable deductions, are a matter of legislative grace. They do not turn upon equitable considerations. A taxpayer claiming such a deduction must show that it falls within the purview of the statute expressly authorizing it. *New Colonial Ice Co.* v. *Helvering*, 292 U.S. 435 (1934). Here the petitioners seek to bring themselves under the umbrella of section 213, I.R.C. 1954.[1]

Medical deductions are limited to expenditures of *amounts paid* for medical care. It is clear that the petitioners cannot deduct the loss sustained upon the sale of their personal residence because the loss was not an "amount paid" for medical care during the taxable year. See sec. 1.213–1(a)(1), Income Tax Regs.; *Robert S. Bassett*, 26 T.C. 619 (1956); and *Maurice S. Gordon*, 37 T.C. 986 (1962). The sale of the house did not give rise to a medical expense, viz, an amount paid for the "diagnosis, cure, mitigation, treatment, or prevention of disease." Although the sale of the house was a consequence of a change of residence made for medical reasons, the loss was primarily attributable to two things—overinvestment and a general decline of real property values in the Uniontown area.

It is unfortunate, indeed regrettable, that community prejudice and ostracism caused the petitioners to move from Uniontown in their effort to avert the possibility of their daughter being damaged psychologically. It illustrates again, and so vividly, what Robert Burns termed "man's inhumanity to man." But neither the severity of their "personal casualty" nor our sympathy for what happened entitles the petitioners legally to a medical deduction for the loss sustained upon the sale of their home. Nor is it an overriding consideration that a psychiatrist and an attorney recommended that the family move from the community in order to improve the mental well-being of the child. See *H. Grant Atkinson, Jr.*, 44 T.C. 39, 54 (1965).

The petitioners recognize that "the only law which we feel can be applied in this case is the law of justice." This is a plea for equitable

---

[1] SEC. 213. MEDICAL, DENTAL, ETC., EXPENSES.

(a) ALLOWANCE OF DEDUCTION.—There shall be allowed as a deduction the following amounts of the expenses paid during the taxable year, not compensated for by insurance or otherwise, for medical care of the taxpayer, his spouse, or a dependent (as defined in section 152):

* * * * * * *

(e) DEFINITIONS.—For purposes of this section—

(1) The term "medical care" means amounts paid—

(A) for the diagnosis, cure, mitigation, treatment, or prevention of disease, or for the purpose of affecting any structure or function of the body (including amounts paid for accident or health insurance), or

relief, but, as much as we might sometimes like to be, ours is not a court of equity—only a court of law. We have no equity powers and we cannot grant relief on such grounds. *Lorain Avenue Clinic*, 31 T.C. 141, 164 (1958) ; and *Estela De La Garza*, 46 T.C. 466 (1966).

The statutory requirements for deductibility have not been met in this case. Petitioners suffered a nondeductible loss of capital invested over 13 years in their Uniontown home, a personal asset. Section 262, I.R.C. 1954, provides that personal, living and family expenses are not deductible. See also section 1.262–1(b)(4), Income Tax Regs., which is explicit in stating that losses sustained upon the sale of property held for personal, living or family purposes are not deductible. Here the dwelling was used only for housing petitioners' family. We therefore hold that the claimed loss is not deductible.

*Decision will be entered under Rule 50.*