*Decision will be entered under Rule 155.*

JOEL H. JACOBS, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 2440–73. Filed September 19, 1974.

---

*Arthur C. Chapman*, for the petitioner.

*Paul G. Topolka*, for the respondent.

TANNENWALD, *Judge:* Respondent determined income tax deficiencies against petitioner for the years 1969 and 1970 in the amounts of $5,963.22 and $1,768.53, respectively.

Other issues having been resolved by the parties, the only issue for decision is whether petitioner is entitled to deduct as a medical expense pursuant to section 213(a)[1] amounts paid for legal fees under a property settlement pursuant to a divorce proceeding.

### FINDINGS OF FACTS

Some of the facts have been stipulated. The stipulation of facts and exhibits attached thereto are incorporated herein by this reference.

Petitioner resided in Chicago, Ill., at the time he filed his petition in this proceeding. For the calendar years 1969 and 1970, his Federal income tax returns were filed with the Internal Revenue Service Center, Kansas City, Mo.

At the age of 22, petitioner married. The marriage lasted for more than 10 years. Three children were born of the marriage. Its termination, because of marital difficulties, left petitioner anxious and unsure about remarriage. Because of this anxiety petitioner, in early December 1968, consulted a psychiatrist about his plans to remarry. He felt it advisable first to explore his feelings about marriage with the psychiatrist in hopes of establishing a long-lasting and productive marital relationship. One thing that bothered petitioner was his belief that his prospective bride had always expressed a great deal of hostility toward other people, especially men. At that time, petitioner was not suffering from any mental illness, but the psychiatrist advised him to delay the marriage until a complete study could be done. Despite this advice, petitioner married on December 19, 1968, believing that any conflicts which persisted could be resolved through marriage.

Instead of resolving themselves, the problems worsened almost immediately. Petitioner felt that he was now the subject of his wife's hostilities and that she was "attacking him both mentally and verbally." In a divorce action petitioner filed on July 23, 1969 (see p. 815 *infra*), he also alleged that his wife had attacked him physically on at least nine different occasions, the first occasion on December 26, 1968.

---

[1] Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954.

By the end of January 1969, petitioner was showing signs of severe depression—a psychiatric illness. He was unable to sleep, was starting to have difficulty functioning at work, was starting to feel depressed most of the time, and was in intense conflict with his wife. The psychiatrist, who was seeing the couple once a week and petitioner one additional time per week, then decided that petitioner's depression was increasing in severity and added medication to psychotherapy as his method of treatment. Petitioner's depression continued to increase as did his insomnia. He was frequently fatigued and unable to think logically. As the weeks of marital conflict continued, the doses of medication were increased substantially but petitioner continued to be unable to sleep more than 3 or 4 hours per night.

By this time, the psychiatrist concluded that the marriage was not working, that the constant conflict which existed was causing petitioner's illness, and that the level of hostility was so great as to make it impossible to save the marriage. He strongly advised petitioner to consider a divorce. At first, petitioner disagreed because he wanted to make the marriage work. The marriage continued to deteriorate and petitioner became increasingly depressed and more suicidal.

The psychiatrist determined that the permanent separation of petitioner and his wife was essential to further psychotherapy and that, without such separation, petitioner could not be successfully treated. He renewed and strengthened his recommendation of divorce. It made no difference to him which party procured it. He privately considered but rejected the possibility of a lengthy hospitalization of petitioner because it would not have provided a long-term solution.

Petitioner then decided to go ahead with the divorce and hired an attorney sometime in June 1969. In the months intervening between the psychiatrist's first suggestion, in April, that petitioner obtain a divorce and his hiring of the attorney to carry out the suggestion, petitioner continued to resist the idea and tried in vain to make the marriage succeed. He vacationed with his wife in June 1969 and continued to reside with her in the same apartment until early August when she left and moved to Florida. After her move, petitioner placed all of her belongings in a storage warehouse and changed the locks on the apartment doors.

Petitioner filed a Complaint for Divorce in the Circuit Court of Cook County, Ill., on July 23, 1969. The complaint alleged that his wife had been guilty of nine separate acts of cruelty and asked for a decree of divorce denying all alimony, past, present, or future. After the divorce proceeding commenced, petitioner became even more depressed than he had been. This was caused by a final realization that he had again failed in a marriage and some of his feelings from before were revived. Believing that the attorney was pursuing a slow, deliber-

ate, and aggressive course in petitioner's behalf, and realizing that a protracted battle, both in court and out, could be extremely dangerous, the psychiatrist advised petitioner to move as quickly as possible. Each time there was some infighting, petitioner would become more depressed. As a result, the psychiatrist suggested that petitioner change his attorney. Petitioner followed this advice and retained new counsel early in September 1969.

An agreement between the new counsel and the wife's attorney was then reached and the whole matter was concluded on October 2, 1969. On this date, petitioner and his wife signed a written settlement agreement, petitioner withdrew his Complaint for Divorce, his wife filed a Counter-Complaint for Divorce, petitioner filed an Answer to the Counter-Complaint, and a Decree for Divorce was entered. The settlement agreement, made "to settle * * * [petitioner's and his wife's] respective property and dower rights, [and] any and all rights of property or otherwise growing out of the marital relationship," provided that the parties "freely and voluntarily agree[d]":

3. As a lump sum property settlement, and in lieu of alimony, in full of all her right, title and interest of every kind, nature, character and description whatsoever, in and to the property, income or estate which the Husband now owns or may hereafter acquire, the Husband shall pay to the Wife the sum of Eleven Thousand Two Hundred Fifty Dollars ($11,250), payable as follows:

    a. $5,000.00 upon the effective date of this Agreement.
    b. $3,000.00 on or before the 15th day of December 1970.
    c. $3,250.00 on or before the 15th day of December 1971.

*     *     *     *     *     *     *

9. The Husband shall pay to [the] attorney for the Wife, the sum of Two Thousand Five Hundred Dollars ($2,500) upon the effective date of this Agreement; said sum being in full of his liability for the Wife's attorney's fees, costs and legal expenses.

The decree recites that it came on as a contested matter at which the wife appeared and testified and both parties were represented by their respective attorneys. The court found:

That the plaintiff [the wife] and the defendant [petitioner] were legally married on the 19th day of December, 1968 at Chicago, Illinois and that the plaintiff has, in good faith, complied with all of the legal obligations toward the defendant imposed upon her by said marriage.

*     *     *     *     *     *     *

That during the time the plaintiff and the defendant, JOEL H. JACOBS, lived together as husband and wife, the plaintiff conducted herself toward said defendant as a good, true and affectionate wife.

That the defendant, JOEL H. JACOBS, has been guilty of extreme and repeated cruelty toward the plaintiff, more particularly, on or about the 4th day of August, 1969 and on or about the 6th day of June, 1969 as charged in plaintiff's Counter-Complaint for Divorce.

The court then ordered the marriage dissolved and the agreement was expressly ratified and incorporated into the decree.

Following the divorce, the psychiatrist continued to treat petitioner who then began to respond to treatment. By the winter of 1969, petitioner's depression was starting to work itself out, but the psychiatrist felt that he had lost his objectivity and much of his therapeutic impact in treating petitioner and that it would be best to refer him to another psychiatrist for further treatment.

Pursuant to this referral, petitioner first became a patient of another psychiatrist in April 1970. At that time, petitioner was continuing to suffer from illness in the form of severe depression. After 1½ years of further continuous treatment, petitioner recovered from his illness.[2]

On his 1969 individual income tax return, petitioner's medical expense deduction included $10,780 paid for "Legal and related expenses necessarily incurred to effect the treatment, mitigation, and care of illness." This amount is comprised of a $5,000 payment to his ex-wife pursuant to the written agreement and $5,780 in legal fees, consisting of $2,500 to her attorney and $3,280 to petitioner's counsel in the divorce proceeding.[3] On his 1970 tax return, petitioner's medical expense deduction included $3,000 in "Expenses necessarily incurred to effect the treatment, mitigation and cure of illness." This amount represented a further partial payment to his ex-wife pursuant to the agreement arising from the divorce proceeding. Respondent has disallowed deductions for both the $10,780 and the $3,000.

#### ULTIMATE FINDING OF FACT

Petitioner's payments of legal fees and to his wife were not amounts paid for medical care.

#### OPINION

Petitioner contends that his marriage made him mentally ill, to the point where he was suicidal, and that his psychiatrist told him that in order to be treatable, he had to obtain a divorce. To carry out his doctor's orders, he hired an attorney and, he contends that, although he had an excellent chance of succeeding in his suit for divorce, his illness and his doctor's recommendation led him to advise his attorney to drop his suit and submit to his ex-wife's demands. Hence, petitioner claims deductions for his legal expenses, those of his ex-wife (which he was required to pay by the terms of the settlement agreement), and the amounts specified in that agreement as

---

depression, that does not cover the total disturbance that he was coming to me for, but as far as the relevance to this situation, I believe that covers it."

[3] The parties have stipulated that the attorneys rendered no services to petitioner as doctors of medicine or psychiatry.

[2] The second psychiatrist testified that petitioner had recovered, "From the severe

satisfaction of her property rights. Respondent contends that all these expenditures were "personal, living, or family expenses," which are rendered nondeductible by section 262.

Section 213(a) provides a deduction for amounts spent during the taxable year for "medical care," defined in subsection (e)(1) as follows:

> (1) The term "medical care" means amounts paid—
> (A) for the diagnosis, cure, mitigation, treatment, or prevention of disease, or for the purpose of affecting any structure or function of the body,

The section does not make medical expenses nonpersonal; it merely carves a limited exception out of section 262 for those expenses which fall within its terms. The two sections must be read in conjunction when determining the deductibility of any given expense. *H. Grant Atkinson, Jr.*, 44 T.C. 39, 49 (1965).

The legislative history of section 213 and its predecessor (section 23(x) of the Internal Revenue Code of 1939)[4] has been the subject of oft-repeated analysis by this Court and we can perceive no reason to repeat it. See *H. Grant Atkinson, Jr.*, 44 T.C. at 47–48; *L. Keever Stringham*, 12 T.C. 580, 583–584 (1949), affirmed per curiam 183 F. 2d 579 (C.A. 6, 1950); *Edward A. Havey*, 12 T.C. 409, 411 (1949). It is sufficient to note that we have carefully studied this history and, while it is too general to answer the specific question raised herein (compare *Commissioner* v. *Bilder*, 369 U.S. 499 (1962), dealing with a situation which had been explicitly dealt with by Congress), it and the decided cases have provided us with the framework of our analysis.

The first hurdle which must be cleared to qualify a particular expense for deduction as a "medical care" expense is to show the present existence or imminent probability of a disease, defect, or illness— mental or physical. Despite respondent's argument to the contrary, we believe petitioner has made this showing through the testimony of his psychiatrists whom we found to be informative and credible witnesses. Mental disorders constitute "disease" within the meaning of section 213(e)(1)(A) (*C. Fink Fischer*, 50 T.C. 164, 173 fn. 4 (1968)), and we are satisfied that petitioner's depression was not a normal depression (experienced daily by many people), but amounted to a "severe depression" generally recognized by psychiatrists as a mental disorder requiring treatment.

Secondly, the payment for which a deduction is claimed must be for goods or services directly or proximately related to the diagnosis, cure, mitigation, treatment, or prevention of the disease or illness. *Gerstacker* v. *Commissioner*, 414 F. 2d 448, 450 (C.A. 6, 1969), reversing

---

[4] Insofar as the instant case is concerned the provisions of the two sections are identical.

and remanding 49 T.C. 522 (1968); *Donald H. Brown*, 62 T.C. 551 (1974); *Edward A. Havey*, 12 T.C. at 412; sec. 1.213–1(e)(ii), Income Tax Regs.

Recognizing that attorneys' fees and other divorce costs are generally nondeductible personal expenditures, see *United States* v. *Gilmore*, 372 U.S. 39, 50 fn. 19 (1963), and sec. 1.262–1(b)(7), Income Tax Regs., the following quotation from the majority opinion in *L. Keever Stringham, supra*, is particularly relevant to our evaluation of the facts involved herein:

> The real difficulty arises in connection with determining the deductibility of expenses which, depending upon the peculiar facts of each case, may be classified as either "medical" or "personal" in nature. There would seem to be little doubt that the expense connected with items which are wholly medical in nature and which serve no other legitimate function in everyday life is incurred primarily for the prevention or mitigation of disease. On the other hand, it is obvious that many expenses are so personal in nature that they may only in rare situations lose their identity as ordinary personal expenses and acquire deductibility as amounts claimed primarily for the prevention or alleviation of disease. Therefore, it appears that in cases such as the one now before us, where the expenses sought to be deducted may be either medical or personal in nature, the ultimate determination must be primarily one of fact. [12 T.C. at 584–585.]

In resolving this question, where the expenditure is obviously not "wholly medical in nature and which serve[s] no other legitimate function in everyday life," [5] (as is the case herein) many factors, such as the taxpayer's purpose or motive, the effect of purchased goods or services on the illness, and the origin of the expense, have been considered relevant. *Edward A. Havey, supra*.

Initially, two points should be made. First, the fact that the psychiatrist "prescribed" a divorce for petitioner is not determinative. *H. Grant Atkinson, Jr.*, 44 T.C. at 54. This is just another factor to examine in determining the required relationship. The same is true with respect to the fact that petitioner showed marked improvement in his mental condition following the divorce. *H. Grant Atkinson, Jr., supra*.

One important condition, which petitioner must satisfy if his claim is to succeed, is whether the expenditure would have been made even if there had been no illness. This "but for" test requires petitioner to prove *both* that the expenditures were an essential element of the treatment *and* that they would not have otherwise been incurred for nonmedical reasons. See *Gerstacker* v. *Commissioner*, 414 F. 2d at 450; *Max Carasso*, 34 T.C. 1139, 1141 (1960), affd. 292 F. 2d 367 (C.A. 2, 1961); *Stanley D. Winderman*, 32 T.C. 1197, 1199 (1959); *L. Keever Stringham*, 12 T.C. at 585.[6]

---

[5] The situation involved in this case is to be contrasted with situations where the expenditures fall within the quoted category, but accomplish both medical and nonmedical objectives. See *David E. Starrett*, 41 T.C. 877 (1964).

[6] Also, see *Frank M. Rabb*, T.C. Memo. 1972–119.

While we are convinced that petitioner's condition worsened and that, because of his marriage, he could not be successfully treated psychiatrically, we are also satisfied that he would have made the expenditures here in issue even if he had not been ill. The marriage had not worked from the beginning. Petitioner detailed for us how his wife began to attack and abuse him almost immediately after the wedding. Even if petitioner had been emotionally sound, we believe he would have gotten a divorce, if not when he did, then shortly thereafter. Moreover, there is absolutely no evidence that petitioner's wife would not have at some point initiated and procured a divorce. In short, we cannot say that petitioner would not have in any event incurred the expenditures in question. Cf. *Mark R. Harding*, 46 T.C. 502 (1966). Compare *Fausner* v. *Commissioner*, 413 U.S. 838 (1973). Compare also the rationale for the allocation made in *C. Fink Fischer*, 50 T.C. at 175–176.

Petitioner's failure to make this *"but for"* showing distinguishes this case from *Gerstacker* v. *Commissioner*, *supra*, and *Kelly* v. *Commissioner*, 440 F. 2d 307 (C.A. 7, 1971), on which petitioner primarily relies. In *Gerstacker*, the Court of Appeals for the Sixth Circuit reversed this Court and allowed deductions for the legal expenses incurred in establishing, conducting, and terminating a guardianship for Mrs. Gerstacker. In reaching its decision, the Court of Appeals said the following:

It seems obvious to this Court that a commitment proceeding was necessary to render medical treatment in the present case where Mrs. Gerstacker would not stay in the hospital voluntarily. It also is obvious that commitment proceedings played a role in medical treatment, *and that except for Mrs. Gerstacker's illness these legal expenses would not have been incurred.* * * * [Emphasis supplied; 414 F. 2d at 450.]

*Kelly* simply involved the use of a hotel room as a substitute for a nonavailable hospital bed. There is no question but that if the taxpayer had not been in a postoperative period where continuous medical care was still required, he would not have occupied the hotel room. *Kelly* is clearly distinguishable.

Keeping in mind that the provisions of section 213(a) and (e)(1)(A) "should be narrowly construed" where, as is the case herein, the expenditures involved "are conventionally understood to be personal, living, or family expenses" (see *H. Grant Atkinson, Jr.*, 44 T.C. at 49), we conclude that petitioner's expenditures are not deductible "medical expenses" under the meaning of section 213.[7]

*Decision will be entered for the respondent.*

---

[7] In light of our rationale, there is no need for us to consider whether any distinction should be drawn between the payments to petitioner's attorney and the payments to his wife and/or her attorney.