DAVID F. and FAAMAISE V. TAUTOLO, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Tautolo v. Commissioner
Docket No. 2788-74
United States Tax Court
T.C. Memo 1975-277; 1975 Tax Ct. Memo LEXIS 97; 34 T.C.M. (CCH) 1198; T.C.M. (RIA) 750277; September 3, 1975. Filed David F. Tautolo, pro se. Gregory A. Robinson, for the respondent. STERRETT
MEMORANDUM FINDINGS OF FACT AND OPINION STERRETT, Judge: The respondent determined a deficiency in petitioners' federal income tax for the taxable year 1972 in the amount of $1,764.50. Due to concessions by the respondent the only issues we must decide are: (1) whether petitioners are entitled to deductions for air fare to Samoa and for living expenses while there as medical expense, and (2) whether petitioners have substantiated certain itemized deductions including interest, taxes, medical expenses, and miscellaneous expenses. FINDINGS OF FACT
*98 Some of the facts have been stipulated and are so found. The stipulation of facts, together with the exhibits attached thereto, are incorporated herein by this reference. Petitioners David F. Tautolo (hereinafter petitioner) and Faamaise V. Tautolo (hereinafter Faamaise) are husband and wife. They were residents of Long Beach, California, at the time they filed their petition herein. Petitioners filed a joint 1972 federal income tax return. In 1968 Faamaise suffered a massive stroke necessitating surgery at Memorial Hospital in California. Her throat was opened and a tube inserted therein. She remained in this condition approximately 1 month at which time her throat was closed. Although Faamaise survived the operation, she had advanced cerebral disease accompanied by paralysis. Following the operation Faamaise was transferred from Memorial Hospital to Rancho Los Amigos Hospital. She remained there over 8 months at which time petitioner was informed that bed shortages dictated her release. Rather than transfer her to another hospital, petitioner brought Faamaise home and hired an attendant to care for her. Petitioner continued to search for a treatment that would lead to Faamaise's *99 improvement. Consultations were had with almost 20 physicians in California and one in Hawaii. All were of the opinion that Faamaise's case was virtually hopeless. Although petitioner has lived in the United States for almost 30 years, both his family and that of Faamaise are from Samoa. In 1971 their Samoan relatives suggested that a trip to Samoa with its concomitant tropical climate might benefit Faamaise. Petitioner agreed, hoping that some type of treatment could be found there and that Faamaise's condition might improve. In 1971 petitioner accompanied Faamaise to Samoa, making his first trip there since 1967. He remained in Samoa 3 weeks, gave Faamaise $400 with which to defray expenses and returned to Long Beach alone. Seven months later petitioner again went to Samoa and accompanied Faamaise on her return trip which occurred in 1972. In all petitioners made three trips between California and Samoa, and expended $249 for each one-way portion of a trip. While in Samoa Faamaise resided at the home of her relatives where she was treated by native Samoan doctors. Such doctors do not attend medical school and believe in calling upon spirits and using medicine from plants to *100 alleviate sickness. In accordance with these beliefs, the treatments administered to Faamaise comprised prayer and massages with plant leaves. Her condition failed to improve as a result of these treatments. Petitioner was employed by Douglas Aircraft. His job entailed the use of safety glasses, special shoes, and a plastic apron for the protection of his clothing. He also purchased airline magazines. Petitioner purchased a stove, bicycle, and refrigerator. He made the installment payments, which included interest, to General Electric Credit Corporation (hereinafter GECC). Petitioner is a minister of his church, and in this capacity he traveled by automobile to visit fellow church members. The following table shows the nature and amount of the items petitioners deducted on their 1972 return, the amounts disallowed by the notice of deficiency, the amounts conceded to be deductible by respondent, and the amounts remaining in issue: [1]
Amount Claimed
Amount Conceded
Amount Remaining Item
and Disallowed
by Respondent
in Issue
Medical expense (Samoa)
$1,950
1,950
Medical expense (Calif.)
880
331
549
Sales tax
250
229
21
Sales tax (auto)
70
70
Gasoline tax
153
100
53
Disability insurance
80
74
6
Furniture & appliances
42
42
Interest to Avco Finance Co.
138
86 [2]
52
Interest to GECC
196
196
Union dues
126
96
30
Uniforms
35
35
Laundry
104
104
Magazines
12
12
*101 OPINION The issues presented are: (1) whether petitioners are entitled to deductions for travel to Samoa as medical expense, and (2) whether petitioners have substantiated certain itemized deductions. Travel to Samoa
Section 213 of the Internal Revenue Code of 1954[3] provides: SEC. 213. MEDICAL, DENTAL, ETC., EXPENSES. (a) Allowance of Deduction.--There shall be allowed as a deduction the following amounts, not compensated for by insurance or otherwise-- (1) the amount by which the amount of the expenses paid during the taxable year * * * for medical care of the taxpayer, his spouse * * *. * * * * *
(e) Definitions. *102 --For purposes of this section-- (1) The term "medical care" means amounts paid-- (A) for the diagnosis, cure, mitigation, treatment, or prevention of disease, or for the purpose of affecting any structure or function of the body, (B) for transportation primarily for and essential to medical care referred to in subparagraph (A), or * * *. In so providing, it effectively carves out a limited exception to section 262 which renders personal, living, or family expenses nondeductible. Joel H. Jacobs,62 T.C. 813, 818 (1974). Expenditures for items serving only medical purposes are clearly encompassed by section 213. On the other hand, expenditures for items relating only to one's general health fall without the ambit of that section and are nondeductible personal expenses. Samuel Dobkin,15 T.C. 886, 888 (1950). In cases such as the one before us, where the item may serve both medical and nonmedical functions our task is to determine on which side of the line the expenditure falls. As such our inquiry is of necessity a factual one. At the outset we note that *103 petitioner's conduct during the period of his wife's illness has been extremely laudable. He has borne up well under trying circumstances and has been more than diligent in his quest to seek aid for his wife. His devotion has been exemplary. Thus we find petitioner's testimony credible and accept as fact that, unlike others who have attempted to disguise vacations as medical necessities, his sole motivation for traveling to Samoa was his wife's betterment. This, however, is not determinative of the issue before us. Edward A. Havey,12 T.C. 409, 412 (1949). To succeed in their claim, petitioners must demonstrate a direct or proximate relation between the expense and the diagnosis, cure, mitigation, treatment or prevention of disease. Joel H. Jacobs,supra. In Edward A. Havey,supra, we set forth the criteria which are relevant in this context. There we said: In determining allowability, many factors must be considered. Consideration should be accorded the motive or purpose of the taxpayer, but such factor is not alone determinative. To accord it conclusive weight would make nugatory the prohibition against allowing personal, *104 living, or family expenses. Thus also it is important to inquire as to the origin of the expense. Was it incurred at the direction or suggestion of a physician; did the treatment bear directly on the physical condition in question; did the treatment bear such a direct or proximate therapeutic relation to the bodily condition as to justify a reasonable belief the same would be efficacious; was the treatment so proximate in time to the onset or recurrence of the disease or condition as to make one the true occasion of the other, thus eliminating expense incurred for general, as contrasted with some specific, physical improvement? [Edward A. Havey,supra at 412.] Prior to their Samoan journey, petitioners consulted nearly 20 physicians in an effort to start Faamaise on the road to recovery. There is no evidence that any of these physicians recommended the trip or indicated that it would be of any benefit. To the contrary, it is apparent that the examining physicians all considered Faamaise's case hopeless and that the idea that she go to Samoa was implanted by the suggestion of relatives that a change of climate might be of some value. Secondly, the treatment *105 received by Faamaise bore no relationship to her particular malady. In so concluding, we pass no judgment on the competence of native Samoan doctors or the efficacy of the treatments they administer. The determination of what is medical care depends not on the experience, qualifications, and title of the person rendering the services but on the nature of the services rendered. Donald H. Brown,62 T.C. 551, 554 (1974), on appeal (8th Cir., Nov. 25, 1974). Therefore, the fact that Samoan doctors do not attend medical schools does not enter into our consideration. What we deem important is that the treatments involved herein were not geared to Faamaise's specific illness. Rather, the evidence shows that all patients, regardless of their individual needs, were recipients of the same treatments given to Faamaise. Finally, the circumstances involved lead us to conclude that petitioner did not have a reasonable expectation that his wife's condition would be improved by prayer and massages. While he no doubt hoped to find a cure in Samoa, his expectation of succeeding was at best minimal. He had resided in the United States for 30 years and his actions indicate an acceptance *106 of American medical practice. He had been fully informed of his wife's condition and we can only conclude that he knew the relationship between the Samoan treatments and his wife's illness was tenuous at best. In fact, all indications are that he accompanied his wife to Samoa only as a last resort as there is no evidence that he had heard of anyone in his wife's condition being cured by such treatments. While we sympathize with the plight of petitioners, they have failed to make the requisite showing necessary to bring the Samoan treatments within the definition of medical care. Hence, the travel to Samoa and living expenses are not expenses "for transportation primarily for and essential to medical care". Other Itemized Deductions
The Commissioner's ruling carries with it a presumption of correctness and petitioners must assume the burden of proving it wrong. Welch v. Helvering,290 U.S. 111 (1933). Petitioner submitted no evidence whatsoever and the respondent's determination must stand regarding the following items: medical expenses in Long Beach, sales tax, automobile sales tax, gasoline tax, disability insurance, furniture and appliances, interest paid *107 to Avco, union dues, uniforms and laundry. Petitioner put forth evidence sufficient to convince us that he made interest payments to GECC during the taxable year 1972. The exact amount is not in evidence but we find $150 to be reasonable in amount. Cohan v. Commissioner,39 F. 2d 540 (2d Cir. 1930). Petitioner also put forth evidence from which we conclude that he purchased magazines relating to his employment during 1972. While the price of the magazines was not proffered into evidence we find $6 to be a reasonable amount. Cohan v. Commissioner,supra.
Decision will be entered under Rule 155.
Footnotes
1. Petitioners claimed and respondent disallowed other itemized deductions which were subsequently conceded in full by respondent. Since they are not in issue they have been omitted. ↩
2. A discrepancy appears in the record concerning the amount of interest respondent has conceded to be deductible. At trial counsel for the respondent conceded $244 to be deductible consisting of $158 paid to IDS Mortgage Corporation and $58 paid to Avco Finance Company. In his brief he states that the latter figure should have been $86.↩
3. All statutory references are to the Internal Revenue Code of 1954, as amended.↩