ESTATE OF EDITH LEE MARANTZ, DECEASED, HAROLD L. MARANTZ AND KENNETH A. MARANTZ, EXECUTORS, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Estate of Marantz v. Commissioner
Docket No. 11038-76.
United States Tax Court
T.C. Memo 1979-463; 1979 Tax Ct. Memo LEXIS 55; 39 T.C.M. (CCH) 516; T.C.M. (RIA) 79463; November 26, 1979, Filed Steven Kamerman, for the petitioner. Richard S. Kestenbaum and Judith E. Soltz, for the respondent. TANNENWALD
MEMORANDUM FINDINGS OF FACT AND OPINION TANNENWALD, Judge: Respondent determined a deficiency of $2,207.86 in decedent's income tax for 1974. The questions for decision are (1) whether expenditures incurred by decedent for her care, including the costs of a trip to a Florida spa, qualify as deductible medical expenses under section 213(e)(1) [1] and (2) the extent to which any expenditures which so qualify have been substantiated. *56 Petitioner claims an overpayment of tax for the year in issue, attributable to payments for medical expenses beyond the amount claimed on the 1974 tax return. FINDINGS OF FACT Some of the facts have been stipulated. The stipulation of facts and exhibits attached thereto are incorporated herein by this reference. Edith Marantz died on November 4, 1977. She resided in New York City at the time she filed her petition herein. She timely filed a Federal income tax return for the year at issue. Harold L. Marantz and Kenneth A. Marantz duly qualified as executors of the Estate of Edith Lee Marantz (hereinafter referred to as "petitioner") and the estate was substituted for decedent as petitioner by order of the Court dated March 27, 1978. During 1974, decedent was 75 years old. She was afflicted with a number of diseases, including obesity, high blood pressure, glaucoma, and a disease affecting her central nervous system. She suffered from fainting, dizzy spells, lack of muscular control, and incontinence. During 1974, she paid $1,670 in doctor *57 bills, $54.24 in Blue Cross premiums, and $62.75 for other medical expenses. Various medications and a special diet were prescribed for decedent. In order to assist and care for her, her son, Dr. Harold Marantz, hired a succession of women to serve as "nurses." [2] These women had no formal training as nurses (they were neither registered nor practical nurses) but were experienced in caring for the infirm. Their functions were to assist decedent with her medications, clean her, assist her (when necessary) in moving about and from the apartment, cook her meals, and generally watch he in case of an accident. A separate maid was hired to clean the apartment itself. Gerda Chares, the first nurse hired by Dr. Marantz, worked through May 1974.In general, she did not work around the clock but went home at night. Ms. Chares accompanied decedent on her occasional ventures outside the house. Ms. Chares was paid $2,647.50 by check for her services and expenses *58 in 1974. In addition, Ms. Marantz paid her medical insurance ($50.16), social security $288.00), and unemployment taxes ($52.63). Gania de Touloff was hired to replace Ms. Chares. She was only employed through June and was paid by check $540.00. During the remainder of the year, other women were hired and were paid in cash. No records were kept documenting what they were paid. Some of these nurses who followed Ms. Chares lived in decedent's apartment, sleeping in the spare bedroom. Their duties were similar to those of Ms. Chares. In March 1974, decedent flew to Florida to spend a few weeks at a spa.No doctor prescribed the trip, although at least one doctor said it wouldn't hurt. Gerda Chares accompanied her and decedent paid per expenses. They returned in April. Later, in 1974 or 1975, decedent visited one of her sons in Columbus, Ohio. No nurse accompanied her on that journey. ULTIMATE FINDING OF FACT Decedent paid $4,538.31 in medical care expenses in 1974. OPINION Respondent has conceded $1,670 in doctor bills, $54.24 in Blue Cross payments, and $62.75 in other medical expenses as being deductible under section 213(a). He contends that all expenses connected *59 with the nurses were nondeductible personal expenses under section 262 rather than medical expenses. He makes the same argument as to the Florida trip. Petitioner asserts, not ony that decedent was entitled to deductions in the full amount of nursing services paid for by check, but that she was also entitled to additional deductions for amounts claimed to have been paid in cash to other nurses, for food provided the nurses, and for a portion of the rent on her apartment. Petitioner also asserts that the Florida trip was a medical necessity and, therefore, the expenses of the trip are similarly deductible. Finally, petitioner claims that decedent was entitled to deduct the Medicare premiums deducted from her social security check. Respondent's regulations recognize payments for nursing services, including nurses' board where paid by the taxpayer, as payments for medical care. Section 1.213-1(e)(1)(ii), Income Tax Regs.; see also Rev. Rul. 76-106, 1976-1 C.B. 71. That a person is not a registered or practical nurse if not determinative; the nature of the services and the purpose for which they were rendered are determinative. Fischer v. Commissioner,50 T.C. 164, 174 (1968); *60 Wendell v. Commissioner,12 T.C. 161, 163 (1949); cf. Carasso v. Commissioner,34 T.C. 1139 (1960), affd. 292 F.2d 367 (2d Cir. 1961). In order to be deductible under section 213, the expenses must be for "goods or services directly or proximately related to the diagnosis, cure, mitigation, treatment, or prevention of the disease or illness." (Emphasis added.) Jacobs v. Commissioner,62 T.C. 813, 818 (1974). The issue is essentially one of fact in the determination of which a variety of factors are considered in the context of a recognition that many expenses have both a medical and personal coloration and that the task of the Court is to determine what portion of such expenses was primarily for medical purposes. Jacobs v. Commissioner,supra at 819; Stringham v. Commissioner,12 T.C. 580, 584-585 (1949), affd. per curiam 183 F.2d 579 (6th Cir. 1950); cf. Havey v. Commissioner,12 T.C. 409, 412 (1949). Applying the foregoing principles, we think that the nurses were more than companions for decedent and that some of their services fall within *61 the ambit of medical care and should be allocated thereto. Cr. Borgmann v. Commissioner,438 F.2d 1211 (9th Cir. 1971), affg. T.C. Memo. 1969-129. [3] The question is what portion of the payments for their services should be so allocated. Based upon our review of the record and keeping in mind that the petitioner has the burden of proof (Rule 142(a), Tax Court Rules of Practice and Procedure), we conclude that 40 percent of the expenditures on account of the nurses are within section 213(e)(1) and the corresponding regulations.[4]Cohan v. Commissioner,39 F.2d 540 (2d Cir. 1930). We now turn to the amount of expenditures to which the 40-percent allocation applies that have been substantiated. On this issue, petitioner likewise has the burden of proof. The amouns paid Ms. Chares and Ms. de Touloff, totaling $3,187.50, were fully documented and respondent concedes that the expenditures were made. In addition, the amounts paid *62 for medical insurance, social security, and unemployment taxes fit into the same category. Cr. Rev. Rul. 76-106, supra.Additional nurses were present during the year, though not paid by check. Ms. Chares corroborated Mr. Marantz' testimony that Esther Labor later worked for, and lived with, his mother. After careful consideration of the testimony of witnesses whom we saw and heard and other evidence in the record and "bearing heavily * * * upon the taxpayer whose inexactitude is of [its] won making," see Cohan v. Commissioner,supra at 544, we have concluded that petitioner paid an addition $100 [5] per week for 20 weeks to those persons in 1974. With respect to expenditures for the maintenance of these persons and Ms. Chares and Ms. de Touloff, we hold that decedent expended $25 per week for such purpose. *63 The remaining issue is whether any of the expenses of the Florida trip are deductible. It is clear that decedent's room and board while in Florida are not deductible. Bilder v. Commissioner,369 U.S. 499 (1962). Her plane fare is also not deductible, because petitioner has not carried its burden of proof that the trip was essential to medical care. Section 1.213-1(e)(1)(iv), Income Tax Regs. We think the same holds true with respect to the expenses of the trip attributable to Ms. Chares. In this connection, we note that, at a later date, decedent traveled unacompanied to Columbus, Ohio.As far as the need for the services of Ms. Chares while decedent was in Florida is concerned, the record is devoid of any evidence as to the nature of the facilities and the medical care available at the spa. For aught that appears, whatever medical care decedent needed could have been provided by personnel at the spa. Based upon the foregoing and the entire record, we hold that decedent expended $6,878.29 in 1974, consisting of $3,187.50 paid to Ms. Chares and Ms. de Touloff, $50.16 for medical insurance, $288.00 for social security, $52.63 for unemployment taxes, $2,000 to nurses *64 other than Ms. Chares and Ms. de Touloff, and $1,300 for maintenance. Forty percent of that amount is $2,751.32. We hold that this amount, in addition to the amount of $1,759.87 conceded by respondent, is deductible as a medical expense for 1974 under section 213, subject to the 3-percent limitation contained in section 213(a)(1). Additionally, the remaining $27.12 for decedent's Blue Cross insurance is fully deductible under section 213(a)(2). [6]
Decision will be entered under Rule 155.
Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended and in effect during the taxable year in issue.↩
2. The term "nurses" is used to describe the women hired to care for decedent. The use of this term is not meant to be determinative of their function, as regards the deductibility of the consideration paid for their services.↩
3. See also Van Vechten v. Commissioner,T.C. Memo. 1973-282↩, affd. in an unpublished opinion (3d Cir., Jan. 7, 1975). 4. See Frier v. Commissioner,T.C. Memo. 1971-84↩.
5. On p. 52 of the transcript, the Court indicated its estimate of cash payments for nurses as " $200 per week." From an examination of the entire record and particularly Dr. Marantz' testimony and the amounts of the checks to Ms. Chares, it is obvious that this represented a spur-of-the-moment mathematical miscalculation by the Court and that the Court should have either indicated a figure of $100 per week or $200 for two↩ weeks. Accordingly, in reaching its final conclusion in this case, the Court does not consider itself bound by the " $200 per week" statment.
6. No deduction is allowable for decedent's claimed Medicare insurance payments because there is no proof of record that any such payments were made. See Rev. Rul. 66-216, 1966-2 C.B. 100↩.