DAVID M. KOHEN and SUSAN I. KOHEN, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Kohen v. Commissioner
Docket No. 15075-79
United States Tax Court
T.C. Memo 1982-625; 1982 Tax Ct. Memo LEXIS 120; 44 T.C.M. (CCH) 1518; T.C.M. (RIA) 82625; October 26, 1982. Daniel J. Wiles and Herbert Seidman, for the respondent. WILBUR
MEMORANDUM OPINION WILBUR, Judge: Respondent has determined the following deficiencies in the petitioners' Federal income taxes: Year
Deficiency
1976
$331.53
1977
381.18
We are asked to decide (1) whether salary paid to a nurse to care for a healthy infant is a medical expense; (2) *121 whether expenses incurred in acquiring a master's degree (LL.M.) are deductible as an educational expense; and (3) whether expenses for a bar review course and bar application fees are deductible business expenses. All of the facts have been stipulated and those facts are so found. Petitioners are husband and wife who resided in Baltimore, Maryland at the time they timely filed their 1976 and 1977 income tax returns. Susan I. Kohen is a party to this proceeding solely by virtue of having filed a joint return with her husband, David M. Kohen. Thus David M. Kohen will hereinafter be referred to as petitioner. In the spring of 1975 while a third-year student at the State University of New York in Buffalo, Faculty of Law and Jurisprudence (hereinafter SUNY), David Kohen applied to and was accepted into the New York University School of Law (hereinafter NYU) program leading to an LL.M. (Taxation) degree. In May, 1975 he decided to enroll in that program. During that same spring, David applied to the States of New York and Pennsylvania to become a licensed member of the legal profession. After graduating from SUNY, David prepared for the two bar exams and sat for them in *122 July, 1975. In the months between graduation from SUNY and enrollment at NYU, petitioner did not hold himself out as a lawyer, nor did he perform any legal services for compensation. He did, however, advise his family on various legal matters. David received no compensation for legal services prior to June 1976. In January, 1976, David made a $1,100 tuition payment to NYU for the spring semester. At that time he had been admitted to the State Bar of Pennsylvania; he became a member of the New York Bar in the spring of 1976. While at NYU, David was offered a job with the Baltimore law firm of Piper & Marbury, subject to his successful completion of the masters program at NYU. In June, 1976, David received his degree and began working for that firm. In June David applied for admission to the State Bar Association of Maryland. He paid $135 for a bar review course. He took the exam in July 1976 and paid $50 for the test along with a $40 fee to the Bar Character Committee for its evaluation. While David was busy studying taxation, his wife Susan gave birth to a normal baby girl, Rachel. On January 19, 1976, when the baby was 4 days old, Susan and Rachel left the Long *123 Island Jewish Hillside Medical Center and returned to their home in Bayside, New York. Although both mother and child were healthy, the doctor recommended that Susan have some help at home so that she could rest and recuperate. Ann Nelson, a practical nurse, was hired, and stayed with petitioners for 11 days, assisting both Susan and Rachel. Issue 1.
The first issue for decision is whether the salary paid to the "baby nurse" is a medical expense deductible under section 213. [1]
Petitioner contends that this is a medical expense. Respondent, conversely, contends that the services rendered by Ann Nelson were not "medical," thus are not within the ambit of section 213. We agree with respondent.
Section *124 262 establishes a basic rule that "no deduction shall be allowed for personal, living, or family expenses." Several exceptions are made, including section 213 which allows a taxpayer to deduct a specific portion of his otherwise uncompensated expenses for "medical care." The Code defines medical care as the "diagnosis, cure, mitigation, treatment, or prevention of disease." Section 213(e)(1)(A). Allowable expenses include, the definition continues, those paid for "the purpose of affecting any structure or function of the body." Section 213(e)(1)(A).
Consistent with the policy that personal expenses are presumptively nondeductible, the regulations provide that "[d]eductions for expenditures for medical care allowable under section 213 will be confined strictly to expenses incurred primarily for the prevention or alleviation of a physical or mental defect or illness." Section 1.213-1(e)(1)(ii), Income Tax Regs. The taxpayers, therefore, bear the burden of convincing *125 us that Ann Nelson's services fit within the statutory definition of medical care. We find that Wendell v. Commissioner,12 T.C. 161 (1949), is dispositive of this case. In Wendell, the taxpayer hired a nurse to care for his infant because his wife had died in childbirth. The central issue, the Court said, turned on "the nature of the services rendered, not on the experience or qualifications or title of the person employed." Wendell v. Commissioner,supra at 163. The Court found that, absent any showing that the services were different in kind than those that would have been rendered by an experienced nursemaid or other competent person, the services were not "medical," and therefore their cost was not deductible. Using this approach, the claim made by petitioner Kohen must fail. Ann Nelson performed chores that anyone accustomed to handling infants was capable of performing. She did not administer drugs, or use special medical equipment, but rather helped in bathing and feeding the baby. Her nursing background, while undoubtedly valuable, does not transform these essentially routine functions into a medical service, nor does it convert *126 an essentially personal outlay into a deductible medical expense. [2] Congress clearly did not intend such inherently personal expenditures to be deductible under section 213, nor did it, we think, intend to include the cost of one who assists a mother in performing her normal parental duties. Ann Nelson's salary must therefore be deemed a nondeductible, personal expense. Issue 2.
The second issue for decision is whether *127 David's tuition at NYU is a deductible expense. Petitioner contends that he is entitled to deduct this as an educational business expense under section 162. Respondent claims that because petitioner had no trade or business at the time the expenses were incurred, they are not deductible under that section. We agree with respondent.
The Code recognizes two categories of educational expense: those deemed personal, and those so closely related to the taxpayer's trade or business that they are properly treated as a business expense, deductible under section 162. In the instant case, petitioner's tuition payment falls in the first category, as he has not demonstrated that the outlay was incurred in "carrying on * * * any trade or business." Section 162(a). Without that initial showing, we need not reach the question of whether petitioner satisfies the more explicit requirements set out in the regulations. Section 1.162-5, Income Tax Regs.
In Jungreis v. Commissioner,55 T.C. 581 (1970), this Court denied a section 162 deduction to a university *128 graduate student and teaching assistant. We interpreted section 162 to require the taxpayer to be engaged in a trade or business at the time the expense was incurred. Jungreis v. Commissioner,supra at 588. [3] See also Wassenaar v. Commissioner,72 T.C. 1195 (1979). Petitioner has not demonstrated that he was in any trade or business when he paid the tuition at issue here. In essence, petitioner was a full-time student. The only evidence of petitioner's employment prior to matriculation at NYU is the stipulation that he gave legal advice without compensation to members of his family during the summer after receiving his J.D. degree, but before he was a member of the bar. Personally attending to some family legal matters is insufficient *129 on the record before us to change the result. Petitioner became a member of the Pennsylvania bar prior to January 1976. However "being a member in good standing of a profession is not tantamount to carrying on that profession for the purpose of section 162(a)." Wassenaar v. Commissioner,supra at 1199-1200. (Emphasis in original.) See also Owen v. Commissioner,23 T.C. 377 (1954). Petitioner did work as a lawyer during 1976, the tax year in question, subsequent to the disputed tuition payment. While it is possible to contend that if he was in the trade during the taxable year, he was in the trade for purposes of section 162, the statute has consistently been construed to require activity prior to the outlay for education. Jungreis v.Commissioner,supra;Horodysky v. Commissioner,54 T.C. 490 (1970) (foreign lawyer's United States law school tuition nondeductible because taxpayer had never practiced in the United States); Wassenaar v. Commissioner,supra (LL.M. student denied deduction because not engaged in practice of law prior to tuition payment); Johnson v. United States,332 F. Supp. 906 (E.D. La. 1971) *130 (LL.M. student entered program immediately after admission to the bar and accordingly there was no business to which the deduction related.) Cf. Ruehmann v. Commissioner,T.C. Memo. 1971-157 (deduction allowed to LL.M. student who practiced as a licensed attorney during the summer between the law school and the LL.M. program). Wassenaar v. Commissioner,supra is virtually indistinguishable from the case before us. In Wassenaar, the taxpayer worked prior to law school, during the summers between his second and third years, and while at school. He attempted to characterize his trade as that of "rendering his services to employers for compensation" or "analyzing and solving legal problems for compensation." (72 T.C. at 1198.) We held that the tuition expenses for an LL.M. degree were not sufficiently related to the trade of being an employee to qualify under section 162. We noted "it is clear that the petitioner's intended trade or business at the time he attended NYU was that of an attorney, with an emphasis on the law of taxation." (72 T.C. at 1199.) We do not deal here with a situation where a taxpayer *131 was engaged in some capacity in rendering legal services for compensation prior to undertaking the graduate legal education here involved. In the case before us there is no evidence in the record that petitioner had a trade or business for which he could incur expenses, and we must therefore conclude that the tuition payments at issue were personal and nondeductible. Issue 3.
The final issue is whether petitioner may deduct his 1976 Maryland bar review course and bar application fees. Petitioner contends that these are business expenses, deductible under section 162. Respondent disagrees, averring that these costs were necessary to qualify petitioner for a new trade or business and thus are nondeductible under section 1.162-5(b), Income Tax Regs. We agree with respondent. Petitioner spent $135 for a bar review course in Maryland after he began working as a lawyer at Piper and Marbury. The rules regarding deductible educational expenses are contained in the regulations, section 1.162-5.In general, an outlay for education which either "[m]aintains *132 or improves skills required by the individual in his employment or other trade or business" or which "[m]eets the express requirements of the individual's employer, or the requirements of applicable law" is deductible so long as that education is not of a type described in section 1.162-5(b), Income Tax Regs.Section 1.162-5(a)(2), Income Tax Regs.Section 1.162-5(b) provides that if the education is undertaken to meet the minimum educational requirements for a job, or if it qualifies the taxpayer for a new trade or business, the expense is not deductible. Petitioner was required to be a member of the bar of Maryland in order to practice in that state and thus meets the test of section 1.162-5(a)(2), Income Tax Regs. Nevertheless the expenses of the bar review course are nondeductible since the course provided education required to meet the minimum educational requirements for qualification in David's trade or business. Sharon v. Commissioner,66 T.C. 515 (1976), affd. 591 F.2d 1273 (9th Cir. 1978), cert. denied 442 U.S. 941 (1979). See section 1.162-5(b)(2)(iii), *133 (example 3), Income Tax Regs. Petitioner's bar application fee represents the cost of obtaining his professional license in Maryland. This fee is a capital expenditure, since the license will have value beyond the taxable year in question. In Sharon v. Commissioner,supra, we held that the taxpayer could amortize the cost of his California license--some $582--over his life expectancy. We noted in dictum, however, that the taxpayer could probably have deducted the cost of his New York license currently, had he claimed it in the year incurred, since it was a mere $25. Sharon v. Commissioner,supra at 527; cf. section 1.162-12(a), Income Tax Regs., allowing current deduction to farmers for inexpensive tools. While we do not attempt to establish a rule of thumb as to what constitutes a small expenditure, we hold that the $90 at issue here may be deducted currently rather than amortized over its useful life. Sharon v. Commissioner,supra.
Decision will be entered under Rule 155.
Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended and in effect in the tax year at issue, unless otherwise noted.
The term "baby nurse" was used by petitioner in taking the deduction on his return. The parties stipulated that the nurse bathed the baby, assisted the mother in bathing, prepared formula, and cared for the new baby in other ways.↩
2. In Jacobs v. Commissioner,62 T.C. 813, 818↩ (1974) we held that the taxpayer first had to show the "existence or imminent probability of a disease, defect, or illness." Second, the taxpayer must demonstrate that the payment for goods or services was directly or proximately related to the diagnosis, cure, mitigation, treatment, or prevention of the disease or illness. In the instant case, petitioners do not even clear the first hurdle. There was no existing disease, defect, or illness: both Susan and the baby were healthy when released from the hospital. Nor was there an imminent likelihood of illness: the doctor instructured the Kohens to return "within several weeks," thereby affirming the general good health of mother and child.
3. The Court in Jungreis v. Commissioner,55 T.C. 581↩ (1970) relied heavily on the fact that the taxpayer was required to be a graduate student in order to qualify for appointment as a teaching assistant. Since student status was a condition precedent to employment as a teacher, the petitioner could not have been in the trade or business of being a teacher when the expense was incurred.