321 F.2d 566
 Sue FOWLER, a minor, widow of Bonnie Eugene Fowler, deceased, by next friend, Ruby Lewis, Plaintiff-Appellant,
v.
TENNESSEE VALLEY AUTHORITY, Defendant-Appellee.
Ruby LEWIS, widow of Austin C. Lewis, deceased, Plaintiff-Appellant,
v.
TENNESSEE VALLEY AUTHORITY, Defendant-Appellee.
 No. 15101.
 No. 15102.
 United States Court of Appeals Sixth Circuit.
 June 12, 1963.
 
 H. H. Gearinger, Chattanooga, Tenn., for plaintiffs-appellants, Moore, Gearinger & Swafford, Chattanooga, Tenn., on the brief, Camp & Camp, Sparta, Tenn., of counsel.
 Thomas A. Pedersen, Asst. Gen. Counsel, Knoxville, Tenn., for defendant-appellee, Charles J. McCarthy, Gen. Counsel, Tennessee Valley Authority, Beauchamp E. Brogan, Knoxville, Tenn., on the brief.
 Before MILLER and O'SULLIVAN, Circuit Judges, and PRETTYMAN,* Senior Circuit Judge.
 PRETTYMAN, Senior Circuit Judge.
 
 
 1
 These law suits arose from a horrible and deplorable occurrence. Two young men, married to sisters, undertook to erect for their father-in-law an outdoor television antenna. The families gathered at the home, and the young men set to work. They put the base of the aluminum pole in the ground. The pole tipped over and fell onto electric power lines in front of the house. The family, gathered in the living room, heard a loud "boom" and, running out, found the young men on the ground, apparently unconscious and partly in contact with the antenna. In about fifteen or twenty seconds there was a second loud noise, and the aluminum pole became white hot, giving off sparks, and remained in that condition for some fifteen minutes. The bodies of the two young men were completely cremated.
 
 
 2
 The surviving widows sued the McMinnville Electric System and the Tennessee Valley Authority for negligence. They settled with the McMinnville Electric System. The District Court granted summary judgment for the Tennessee Valley Authority,[1] and the plaintiffs appealed.
 
 
 3
 The McMinnville Electric System is a distribution system owned by the City of McMinnville, Tennessee. It purchases its electric power from the Tennessee Valley Authority under a written contract. Delivery of the power occurs through a substation of the Authority in the nearby City of Sparta.
 
 
 4
 The Authority had installed on its side of the delivery point at the substation an automatic circuit breaker. It is the theory of the plaintiffs that this circuit breaker was designed as a safety device "and its intended use was relied upon by the defendant McMinnville Electric System to the knowledge of the defendant Tennessee Valley Authority, so as to shut off the electric current in the wires when anything came into contact and remained in contact with the wires so controlled by the said switch. * * * [B]ecause of faulty design, construction and installation and negligent maintenance the switch malfunctioned and failed to again instantly dis-engage upon its automatically having re-engaged. * * * Said accident and the death of the decedent * * * were the result of the negligence. * * *"[2] The plaintiffs further averred and argued that the operation of the circuit breaker device constituted notice to the Authority of trouble on the line.
 
 
 5
 The Authority answered the complaint, attaching to its answer as an exhibit a copy of the contract with the McMinnville System. The Authority then filed a motion for summary judgment, submitting affidavits of the manager of the McMinnville System, of the Director of the Power Planning and Engineering Division of the Tennessee Valley Authority, and of the Authority's substation operator. Depositions were taken.
 
 
 6
 The contract provided that neither party thereto should be responsible for installing at any delivery point equipment for the protection of the other party's facilities, or for damages to the other's system resulting from the failure of its own protective devices. The contract further provided that the municipality was to furnish and maintain all the lines and electrical equipment from the point of delivery on the municipality's side of the delivery point; and further that the Tennessee Valley Authority was not obligated to inspect the municipality's facilities and that the Authority's failure to inspect should not render it liable or responsible for any loss or damage resulting from accidents occurring on the municipality's premises. The affidavits recited in considerable detail facts concerning the circuit breaker and its operation and the ownership and operation of the electric lines. The affiants asserted that on the date in question the circuit breaker was in good condition and operating normally as designed. The Director of the Planning Division asserted in his affidavit that the circuit breaker had two purposes, one to protect the Authority's equipment and the other to assure continuity of service. He asserted that, when short circuits or overloads of sufficient magnitude to endanger the Authority's equipment occurred on a distributor's system, the circuit breaker automatically stopped the flow of electricity; that within seconds the current was restored; and that, if the overload persisted, the circuit would then automatically lock in an open position and could thereafter be closed only by manual operation. He asserted that the breaker in this case was thoroughly tested after the accident and was found to be in perfect working order.
 
 
 7
 The plaintiffs filed no contradictory material; they merely recited the facts of the occurrence at the scene of the disaster.
 
 
 8
 The District Judge rendered an opinion, in which he recited the facts and discussed the law leading to the summary judgment which he rendered for the defendant Authority. He later issued a supplemental opinion on a further motion for summary judgment.[3]
 
 
 9
 The process of reaching a disposition of a motion for summary judgment is, of course, in two phases. First, the question is whether, upon the pleadings, depositions, admissions and affidavits on file, there is any genuine issue as to a material fact. The second question is whether on the facts thus shown the moving party is entitled to judgment as a matter of law.
 
 
 10
 The law in Tennessee upon the legal problem here posed is settled. In Dabbs v. Tennessee Valley Authority[4] the Supreme Court of Tennessee, Justice Burnett writing for the court, held that under similar circumstances the Tennessee Valley Authority, having assumed no duty to inspect or maintain the lines of a distributing company and having no notice of a defective condition of such lines, was not liable for the electrocution of a third person as the result of a break in a line under the exclusive control of the distributing company.
 
 
 11
 In the case at bar the material questions of fact, under the applicable law, were (1) whether under its contract the Tennessee Valley Authority had assumed any responsibility for conditions upon the lines of the distributor, which question, more specifically, would be whether the circuit breaker was designed to protect against mishaps upon or damages arising from the distributor's lines; (2) whether the Authority had notice of a defective condition on the lines or of the impending mishap, specifically here whether the functioning of the device, in its designed manner or not, constituted actual or constructive notice to the Authority of a dangerous condition on the lines of the distributor; and (3) whether the circuit breaker operated on this day in the manner for which it was designed.
 
 
 12
 There was no genuine issue as to any of these foregoing facts. The data presented by the Authority was direct, specific, and apparently authoritative. The plaintiffs advanced no contradictory material. Their account of what happened coincided with what the engineer affiants said would happen if a break, short circuit, or other irregularity was not of sufficient impact to endanger the Authority's equipment. The Authority was clearly not responsible for the McMinnville lines. The relationship was contractual, and the contract was specific on the point. The circuit breaker, on the Authority's side of the delivery point, was intended to protect the generator's equipment against reactions which can occur in electric systems when interference or impediment occurs anywhere on the connected lines. This breaker, like household fuses, had a calculated breaking point. The engineers said thousands of disturbances occur every year on the TVA-connected lines, which disturbances are not of sufficient magnitude to cut off the flow of power permanently; which, in other words, are not of sufficient reactionary effect to cause damage to the equipment of the generating company. This breaker was pictured as operating in that fashion upon the occasion here involved.
 
 
 13
 If the circuit breaker was operating normally when it cut off the power for a few seconds, then restored it and left it on, the notice it gave was that a defect or impediment of less than major impact had occurred. This operation could not be translated into any other notice. Then the inquiry is whether the breaker was defective in design or in operation this day; i. e., whether it should have been so designed and operated as to give notice of the sort of mishap which here occurred. On this point the evidence presented by the Authority was specific; plaintiff's proffered none. Plaintiffs say the doctrine of res ipsa loquitur applies. We think it does not. It is common knowledge that, if an electric power line is grounded by a conductor, electric current will flow through the conductor. That many mishaps can occur with a force so dangerous as electric power is a fact well known to everyone these days, and we think that injury due to such a mishap does not in and of itself spell negligence.
 
 
 14
 We think the District Judge was correct in the reasoning by which he reached summary judgment.
 
 
 15
 Affirmed.
 
 
 
 Notes:
 
 
 *
 Sitting by designation from the District of Columbia Circuit
 
 
 [1]
 Fowler v. Tennessee Valley Authority, 208 F.Supp. 828 (E.D.Tenn.1962)
 
 
 [2]
 The Appendix of the plaintiffs-appellants contains only the papers relating to the case of plaintiff Fowler. Presumably the papers in the case of the plaintiff-appellant Lewis were identical except for the names of the parties
 
 
 [3]
 See note 1, supra
 
 
 [4]
 194 Tenn. 185, 250 S.W.2d 67 (1952)