DONALD H. BROWN, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 7994–71. Filed July 30, 1974.

*Edward M. Cohen*, for the petitioner.
*Richard J. Hunter*, for the respondent.

SCOTT, *Judge:* Respondent determined a deficiency in petitioner's Federal income tax for the calendar year 1968 in the amount of $5,546.24.

Some of the issues raised by the pleadings have been disposed of by the parties, leaving for decision whether payments made in 1968 by petitioner for Scientology auditing for himself and his wife by an ordained priest and for his wife at the Hubbard College of Scientology and the Hubbard Academy of Personal Independence and related travel expenses are deductible as medical expenses.

### FINDINGS OF FACT

Some of the facts have been stipulated and are found accordingly.

Donald H. Brown (hereinafter petitioner) was a resident of Minnetonka, Minn., at the time he filed his petition in this case. Petitioner and his wife, Catherine H. Brown, filed their joint Federal income tax return for the calendar year 1968 with the district director of internal revenue, Minneapolis, Minn.

Petitioner and his wife began marital counseling with Rev. Clyde A. Benner (hereinafter Benner), a priest of the Episcopal Church, in late 1964. They had been referred to Benner for marital counseling by their minister, Rev. Clem Wagstrom, United Church of Christ, Minnewashta Heights, Minn. At the time petitioner's wife came to Benner for counseling she felt that she was depressed, had a low energy level, and had suicidal tendencies.

Benner was not a licensed psychiatrist or psychologist, but he was an ordained minister. He also held a degree in chiropractic but never treated petitioner or his wife as a chiropractor. The statements he used to bill petitioner were headed "Dr. C. A. Benner," but petitioner knew Benner had no medical training other than as a chiropractor. Benner made no claim that he was a psychologist, but he did state to petitioner's wife that he used psychological principles in his counseling work. He alluded to these principles as the Christian Ethic and described his services as helping two people to be responsible to each other, to act responsively to one another, and to have greater understanding.

Early in the course of the counseling sessions, Benner referred petitioner and his wife to a clinical psychologist for testing to determine whether their problems were of the type he could handle by pastoral counseling. Benner would not counsel psychotic people or seriously neurotic individuals. The tests indicated that both petitioner and his wife had personality problems but that these problems were of the type that Benner and the psychologist felt could be helped by Benner's pastoral counseling.

Benner's counseling with petitioner's wife did help to alleviate her depression and low energy level, and she ceased to have suicidal tendencies. Benner would talk with petitioner's wife and suggest books for her to read. He would then discuss these books with petitioner's wife with emphasis on the relationship of the statements in the books to her life.

In late 1967 Benner suggested to petitioner and his wife that they could further develop their awareness and achieve greater peace within themselves through Scientology. All services rendered by Benner to petitioner and his wife from January to April 1968 were in the nature of Scientology processing for which they paid him $1,838. At that time Benner was working toward becoming a fully qualified Scientology auditor and was qualified to render Scientology processing services to others at the lower levels of such processing.

The Scientology creed espouses the belief that the spirit can be saved and that the spirit can save and heal the body. Scientology auditors are not required to be medically trained in any way and achieve their status as auditors by reaching a high level in the same courses they administer to the individuals they audit.

In Scientology auditing each person audited is asked the same specific set of questions while he holds an instrument called an E-meter which electrically measures his response. His answer to the questions and the readings from the E-meter are then used as an indication of his personal condition. There are no questions directed to the person audited as an individual or to his specific problems, nor are his answers

analyzed by the Scientology auditor. During the audits no ailments of mind or body of the person being audited are diagnosed or treated, but if an auditor discovers that a person undergoing auditing has an organic defect, he will advise the person being audited to seek medical help.

After Benner in early 1968 had audited petitioner and his wife using Scientology processing to the extent of his then training as a Scientology auditor, petitioner and his wife went to the Church of Scientology, Minneapolis, Minn., where the auditors were qualified to process at a higher level. They expected through this further Scientology auditing to receive an improvement in their ability to communicate with each other and with other people and to better handle any disagreements they might have. They felt that they did receive improvement from the further processing and later in 1968, with the encouragement of Benner, petitioner and his wife traveled to East Grinstead, England, and Edinburgh, Scotland, to take courses at the Hubbard College of Scientology and the Hubbard Academy of Personal Independence. Petitioner paid over $12,000 for the courses taken by himself and his wife at the Hubbard College and the Hubbard Academy. The amount of $6,560 represented the cost of his wife's courses.

Petitioner's wife not only received auditing, but she also took courses in England costing a total of $1,092 in which she learned to audit herself and other individuals. Petitioner's wife believed that as a result of the Scientology processing she received from Benner and from the Scientologists in England, her mental outlook improved and some of her physical ailments, including migraine headaches, a hypothyroid condition, and irregular menstrual cycle were alleviated.

On his 1968 Federal income tax return, petitioner claimed as deductions for medical expense payments to Benner for counseling, and payments for his wife's Scientology courses in England, as well as travel expense to Benner's office, the local Scientology building, and his wife's share of the travel expenses to England in an amount totaling $9,007.20. Respondent disallowed this claimed deduction on the basis that none of the expenses constituted payment for medical care as defined by section 213, I.R.C. 1954.[1]

OPINION

Section 213 provides, with certain limitation, that there shall be allowed as a deduction expenses paid for medical care of the taxpayer, his spouse, and dependents. Medical care is defined in section 213(e) as amounts paid for "the diagnosis, cure, mitigation, treatment, or prevention of disease, or for the purpose of affecting any structure or

[1] All references are to the Internal Revenue Code of 1954.

function of the body" and "for transportation primarily for and essential to medical care." [2] Section 1.213–1(e)(1)(ii), Income Tax Regs., requires that "Deductions for expenditures for medical care * * * be confined strictly to expenses incurred primarily for the prevention or alleviation of a physical or mental defect or illness."

The determination of what is medical care depends not on the experience, qualifications, and title of the person rendering the services, but on the nature of the services rendered. *George B. Wendell*, 12 T.C. 161, 163 (1949).[3] Therefore, the fact that none of the persons who rendered Scientology processing to petitioner and his wife in 1968 was trained or licensed in medicine, psychiatry, or psychology is not determinative of the issue in this case. It is necessary to consider whether the services rendered to petitioner and his wife were for "medical care" as defined in section 213(e). If the services are of such a character as to fall under this definition, the amounts paid for such services are deductible. *George B. Wendell, supra.*

Section 262 provides that "Except as otherwise expressly provided * * *, no deduction shall be allowed for personal, living, or family expenses." The provisions of section 213, in providing for a deduction for medical expenses, allow by express provision for the deduction of an item of personal or family living expense; but if payments for services for a taxpayer's general physical, mental, or spiritual well-being or that of his family do not fall within the definition of medical expenses in that section, their amount is a nondeductible expense. As we pointed out in *Edward A. Havey*, 12 T.C. 409, 411–412 (1949), many expenses such as the costs of vacations or athletic club fees to keep a taxpayer physically fit may be directly beneficial to the general health of a taxpayer, but they are nondeductible personal or living expenses.

Petitioner contends that when he and his wife consulted Benner for marital counseling it was for the purpose of receiving treatment for psychological problems each was experiencing and that Benner's counseling services were to them in the nature of psychotherapy. Petitioner argues that the Scientology processing administered to them by Benner and later by auditors at the Hubbard College of Scientology in 1968 was in furtherance of the psychotherapeutic treatment he and his wife received prior to 1968 from Benner.

---

[2] SEC. 213. MEDICAL, DENTAL, ETC., EXPENSES.

(e) DEFINITIONS.—For purposes of this section—

(1) The term "medical care" means amounts paid—

(A) for the diagnosis, cure, mitigation, treatment, or prevention of disease, or for the purpose of affecting any structure or function of the body,

(B) for transportation primarily for and essential to medical care referred to in subparagraph (A), or

[3] Respondent has recognized and further amplified this rule in Rev. Rul. 63–91, 1963–1 C.B. 54, and does not base his argument in this case on the qualifications of Benner or of the auditors of the Church of Scientology.

Respondent takes the position that the marital counseling petitioner and his wife received from Benner was not psychotherapy but rather was personal counseling, and that the Scientology processing he administered to petitioner and his wife in 1968 was not in the nature of psychotherapy. Respondent also argues that evidence as to the substantive nature of auditing received by petitioner's wife at the Hubbard College of Scientology was too indefinite to prove that payments for the courses there were medical expenses.

We agree with respondent. Petitioner and his wife were initially referred to Benner so that they might receive marital counseling from him. Although the record is very sparse as to the nature of any other counseling petitioner and his wife received from Benner, there is nothing to indicate that it was of other than a personal nature. However, whatever may have been the type of counseling petitioner and his wife received from Benner during the years prior to 1968, there is no issue before us concerning the deductibility of the cost of any services other than the Scientology processing petitioner and his wife received in 1968. There is nothing in the record to indicate that this processing or auditing was for anything other than the spiritual well-being of petitioner and his wife. The record shows that petitioner and his wife received the same auditing procedures as any other person receiving Scientology auditing. The questions asked of all were the same and there was no special analysis of the answers geared to any particular problems which petitioner's wife might have had. Petitioner in his final brief (entitled "Petitioner's Re-Argument") states that "It should be clarified totally that Scientology is a religion, with a practice of counseling which seeks to enable the individual to get along in life better, while finding greater spiritual awareness of himself." [4] Petitioner's payments for the Scientology processing which is a general part of the religion of Scientology is somewhat comparable to the payment by a taxpayer of tuition for his child at a regular private educational institution primarily for the child's education. Even though the child may have emotional problems which become less pronounced while attending the school (*H. Grant Atkinson, Jr.,*

[4] The United States Court of Appeals for the District of Columbia in *Founding Church of Scientology* v. *United States,* 409 F. 2d 1146 (C.A.D.C. 1969), certiorari denied 396 U.S. 963 (1969), concluded that the Church of Scientology had made a prima facie case that it was a bona fide religion. In its opinion the court stated at p. 1154:

"Auditing or processing, in their view, treats the spirit of man, not his body, though through the healing of the spirit the body can be affected. They have culled from their literature numerous statements disclaiming any intent to treat disease and recommending that Scientology practitioners send those under their care to doctors when organic defects may be found. They have introduced through testimony a document which they assert all those who undergo auditing or processing must sign which states that Scientology is 'a spiritual and religious guide intended to make persons more aware of themselves as spiritual beings, and not treating or diagnosing human ailments of body or mind, and not engaged in the teaching of medical arts or sciences * * *.' "

44 T.C. 39 (1965)) or may be blind and profit from the greater degree of personal attention (*Arnold P. Grunwald*, 51 T.C. 108 (1968)), such tuition payments are not deductible medical expenses but rather non-deductible personal expenses.

Even if we accept petitioner's contention that his wife was suffering from various psychological problems, the record is clear that she did not receive treatment from the Scientology auditors directed at her specific problems. She testified that one worked his own way through the courses by answering a standard set of questions. There was no evidence as to what sort of questions were asked and what sort of guidance was received from Scientologists who were not trained in either psychology or medicine. A qualified Scientology auditor achieves that status by simply progressing through a required number of courses, and indeed petitioner's wife became qualified to audit other individuals in this manner.

There is a total lack of evidence concerning any specific treatment rendered to petitioner or his wife for any specific problems they may have had during the Scientology processing or auditing. Petitioner's wife stated in her testimony that her depressed and suicidal feelings were alleviated and that certain physical ailments she had experienced were improved as a result of Scientology auditing. If we were to accept her evaluation of the benefits she received from Scientology auditing as a fact, which we do not since she totally lacked the expertise to have any weight given to her conclusion as to the reasons for her improvement, it would not follow that the amounts petitioner expended for her Scientology auditing are deductible medical expenses. That an indirect medical benefit may result from a personal expense does not make that personal expense deductible, since deductible medical expenses are limited to those primarily incurred for medical care. *Donnelly* v. *Commissioner*, 262 F. 2d 411, 413 (C.A. 2, 1959), affirming 28 T.C. 1278 (1957). See also *John J. Thoene*, 33 T.C. 62 (1959).

We hold that petitioner is not entitled to deduct as medical expenses the amounts paid in 1968 to Benner for Scientology processing and to the Hubbard College of Scientology and the Hubbard Academy of Personal Independence for his wife's Scientology auditing.

Since we conclude that the Scientology auditing received by petitioner and his wife in 1968 was not medical care, the transportation expense incurred by petitioner and his wife in traveling to Benner's office and by petitioner's wife in traveling to the Hubbard College in England was not paid for transportation primarily for and essential to medical care and is therefore disallowed.

*Decision will be entered under Rule 155.*