*An appropriate order will be entered.*

WILLIAM W. MATTES, JR., PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 11475–78.     Filed September 21, 1981.

William W. Mattes, Jr., pro se.
*Robert A. Miller*, for the respondent.

### OPINION

WILBUR, *Judge*: Respondent determined a deficiency in petitioner's Federal income tax for 1976 in the amount of $408.70. The sole issue for our decision is whether the expense of a surgical hair transplant performed by a physician qualifies as a deductible medical expense under section 213.[1]

This case was submitted for our decision under Rule 122,

---

[1]All section references are to the Internal Revenue Code of 1954 as amended and in effect during the year in issue.

Tax Court Rules of Practice and Procedure. All of the facts have been stipulated and are so found.

Petitioner William W. Mattes, Jr., resided in Bel Air, Md., at the time he filed his petition in the instant case. He filed his individual Federal income tax return for 1976 with the Internal Revenue Service Center, Philadelphia, Pa.

In January 1976, petitioner, a 24-year old male who suffered from premature baldness, began the process of surgical hair transplants which was completed in October 1976 at a total cost to him of $1,980. Petitioner underwent the surgery for purely cosmetic reasons, and his general emotional well-being was improved as a result of the hair transplants.

Hair transplantation is a surgical procedure whereby small plugs of tissue are transferred surgically from one part of the scalp to another part of the scalp. This procedure requires specialized training and is performed, for the most part, by dermatologists and, to a lesser extent, by plastic surgeons.

The surgical hair transplants were performed on the petitioner by a physician, Herbert L. Kronthal, M.D., at his office and involved the use of a local anesthetic. Under Maryland law, surgical hair transplants are required to be performed by a licensed physician.

Male pattern baldness, medically termed androgenic alopecia, is a physiological condition caused by normal levels of androgenic steroids acting on follicles that are genetically predisposed to shed hair. There are no commercially available drugs which will effectively treat pattern baldness. The surgical hair transplant technique is widely accepted in the medical community as an effective treatment for male pattern baldness, baldness from scars due to accidents, operations, or radiation, and baldness due to inflammatory or infectious diseases of the scalp. Various complications can arise subsequent to the surgery such as scalp infection, scarring, osteomyelitis of the skull, and local trauma.

On his return for 1976, petitioner claimed the $1,980 expended by him for the surgical hair transplants as a medical expense in computing his allowable medical expense deduction. In his statutory notice of deficiency, the respondent disallowed such claimed amount as a medical expense, resulting in the proposed deficiency at issue in the instant case.

The sole issue is whether a surgical hair transplant is a deductible medical expense under section 213.

Petitioner contends simply that since the respondent has ruled that facelifts are a deductible medical expense,[2] this Court should accord similar treatment for hair transplantations. We find on the basis of the statute, regulations, and case law that the surgical hair transplantation undergone by petitioner is a deductible medical expense.

Section 213(a) provides a deduction for expenses paid for "medical care," a term defined in section 213(e)(1) as follows:

(1) The term "medical care" means amounts paid—
   (A) for the diagnosis, cure, mitigation, treatment, or prevention of disease, or for the purpose of affecting any structure or function of the body.

Medical care is further defined in section 1.213–1(e)(1), Income Tax Regs.:

(e) *Definitions*—(1) *General.* (i) The term "medical care" includes the diagnosis, cure, mitigation, treatment, or prevention of disease. Expenses paid for "medical care" shall include those paid for the purpose of affecting any structure or function of the body or for transportation primarily for and essential to medical care. * * *

(ii) Amounts paid for operations or treatments affecting any portion of the body, including obstetrical expenses and expenses of therapy or X-ray treatments, are deemed to be for the purpose of affecting any structure or function of the body and are therefore paid for medical care. Amounts expended for illegal operations or treatments are not deductible. Deductions for expenditures for medical care allowable under section 213 will be confined strictly to expenses incurred primarily for the prevention or alleviation of a physical or mental defect or illness. Thus, payments for the following are payments for medical care: Hospital services, nursing services (including nurses' board where paid by the taxpayer), medical, laboratory, surgical, dental and other diagnostic and healing services, X-rays, medicine and drugs * * * artificial teeth or limbs, and ambulance hire. However, an expenditure which is merely beneficial to the general health of an individual, such as an expenditure for a vacation, is not an expenditure for medical care.

The statutory definition of medical care is a broad one, encompassing amounts paid either for the treatment of a disease or for the purpose of affecting any structure of the body. Since it cannot be doubted that the scalp is a part of the

---

[2]Rev. Rul. 76–332, 1976–2 C.B. 81.

human body, the transplantation of hair from one portion of the scalp to another through a surgical procedure certainly affects a structure of the body. Furthermore, we think it is clear that the hair transplant operation undergone by petitioner was a treatment for a specific physical defect, that of baldness, medically termed alopecia.[3] The most common type of baldness is male pattern baldness, medically termed androgenic alopecia.[4] Such baldness is caused by normal levels of androgenic steroids acting on follicles that are generally predisposed to shed hair.[5] Therefore, hair transplantation is a treatment for a physical defect within the meaning of "medical care."

Respondent however emphasizes the fact that since petitioner underwent the hair transplant for purely cosmetic reasons, the cost of the procedure was essentially a nondeductible personal expense.[6] We cannot agree. Of course, there is the

---

[3]It is generally accepted that courts may take judicial notice of scientific facts which are commonly known and which may be found in encyclopedias, dictionaries, or other publications. See, e.g., *Fowler v. Tennessee Valley Authority*, 321 F.2d 566, 570 (6th Cir. 1963) (judicial notice of the effect of electrical powerline grounded by a conductor); *Van Pelt v. United States*, 134 F.2d 735, 738 (6th Cir. 1943) (judicial notice of the effect of syphilis). See generally McCormick on Evidence, sec. 330, (2d ed. 1972). Thus, we find that petitioner has satisfied his burden of proof as to the expense incurred taking into account the facts as stipulated relating to the medical procedures of hair transplantation and our own cognizance of certain medical facts. See Rule 142(a), Tax Court Rules of Practice and Procedure.

[4]See Stough, "Contemporary Techniques of Hair Replacement," 69 Postgraduate Medicine 53–62 (Apr. 1981); Salyer, "Hair Transplantation," 72 J. Tenn. Med. A. 583–585 (Aug. 1979).

[5]See Stough and Salyer, *supra*. The parties stipulated that petitioner suffered from "premature baldness." Since there is nothing in the record to indicate that petitioner's baldness was a result of an accident, operation, or radiation or due to an infectious disease of the scalp, we assume that petitioner suffered from the most common type of premature baldness, that of male pattern baldness. Nonetheless, since baldness is a physiological condition, classification of petitioner's baldness is immaterial for purposes of our decision.

[6]In Rev. Rul. 76–332, 1976–2 C.B. 81, the Service ruled that a facelifting operation was deductible "since the purpose of the taxpayer's operation was to affect a structure of the human body" (1976–2 C.B. at 82), although the taxpayer underwent the surgery for cosmetic reasons and the operation was not the result of a recommendation by a physician. On brief, the respondent made a futile attempt at reconciling his position in the instant case with that taken in Rev. Rul. 76–332.

"Respondent admits that the distinction between the facts in the face lift ruling and those in the present case are somewhat difficult to draw. While the performance of both hair transplantations and face lift operations require specialized training and expertise, the basis for distinction involves the more extensive nature of the face lift operation, which generally requires a combination of local and general anesthetic (typically intravenous sedation) and is frequently performed in an operating room. Such operation generally involves the extensive use of sutures. By contrast, the hair transplant generally requires only local anesthetic and is frequently performed in a physician's office. A hair transplant involves

need to distinguish between those expenses which are primarily medical in nature and those which are personal. Indeed, courts have long been forced to draw such a line in situations where the character of the expense is a personal one, that is, one that is normally expended in the ordinary course of one's life without health care motives. See, e.g., *Commissioner v. Bilder*, 369 U.S. 499 (1962) (Florida living expenses incurred by taxpayer who suffered from a severe heart condition and who was ordered by his doctor to abandon his home and legal practice in order to spend the winter months in Florida not deductible under sec. 213); *Randolph v. Commissioner*, 67 T.C. 481 (1976) (difference in cost between a normal diet and a special, medically prescribed diet deductible).

The regulations preclude a deduction of expenses for personal enjoyment disguised as a medical expense. Thus, "an expenditure which is *merely* beneficial to the general health of an individual, such as an expenditure for a vacation, is not an expenditure for medical care." Sec. 1.213–1(e)(1)(ii), Income Tax Regs. (Emphasis added.) In short, the tension between section 213 and section 262 exists where an expense is personal in nature and "merely" beneficial to the taxpayer's general emotional or spiritual well-being without having a direct or proximate therapeutic relation to the bodily condition in question. See, e.g., *Adler v. Commissioner*, 330 F.2d 91 (9th Cir. 1964) (cost of dancing lessons which taxpayer considered therapy for his varicose veins not deductible as medical expenses); *Brown v. Commissioner*, 62 T.C. 551 (1974), affd. per curiam 523 F.2d 365 (8th Cir. 1975) (expenses incurred in Scientology processing were not deductible since they were for

---

only the transfer of small plugs of tissue from one part of the scalp to another part of the scalp. The degree of incursion into the body is greater in the case of a face lift, which involves the removal of tissue. [Respondent's Brief at 13.]"

We believe respondent's distinction is splitting hairs. Both hair transplantation and facelifting operations affect a structure of the body. Both operations require medical expertise. Both are undergone for cosmetic reasons although the procedure itself is treatment for a physical condition of the body. We do not see any way to reconcile these inconsistent positions aside from respondent's wish to halt the trend of liberal deductibility in the context of expenses for cosmetic surgery. We note further that the Service has taken a liberal position regarding the deductibility of a similar medical expense. See Rev. Rul. 62–189, 1962–2 C.B. 88 (cost of wig prescribed by a doctor for the mental health of taxpayer's daughter who had lost her hair due to disease was deductible).

taxpayers' "spiritual well-being" and not for the purpose of alleviating a specific illness); *Ring v. Commissioner*, 23 T.C. 950 (1955) (expenses incurred for a trip to the Shrine of Our Lady of Lourdes (France) to seek spiritual help to alleviate a physical defect were not deductible).

In the instant case, however, the character of the expense was wholly medical in nature. The hair transplant operation was a specific medical treatment to alleviate a specific condition of the body. In fact, the regulations in stating that "Deductions for expenditures for medical care allowable under section 213 will be confined strictly to expenses incurred primarily for the * * * alleviation of a physical * * * defect" (sec. 1.213–1(e)(1)(ii), Income Tax Regs.), cite surgical services as an example of such deductible medical care payment. Hair transplantation is a surgical procedure whereby small cylinders of hair-bearing scalp are transferred surgically from the occipital area of the scalp to the bald area.[7] This procedure involves local anesthesia and is performed in the doctor's office. The procedure requires specialized training, and, under Maryland law, surgical hair transplants are required to be performed by a licensed physician. In fact, medical expertise is especially necessary in view of the myriad complications that could arise subsequent to such surgery such as scalp infection, scarring, osteomyelitis of the skull, and local trauma.[8] In addition, since there are no commercially available drugs which will effectively restore hair growth, surgical procedures remain the only acceptable means of alleviating alopecia.[9]

Admittedly, the decision to undergo hair transplantation stems from a personal choice. Living with baldness does not constitute a risk to one's health. Baldness may in fact be appealing to some. Nonetheless, the fact that the surgical procedure of hair transplantation was undertaken by petitioner for cosmetic reasons and that the efficacy of the procedure

---

[7] See Salyer, "Hair Transplantation," 72 J. Tenn. Med. A., *supra* at 583.

[8] See Hanke, Norins, Pantzer & Bennett, "Hair Implant Complications," 245 J. A.M.A. 1344–1345 (Apr. 3, 1981); Jones, Ignelzi, Frank & Blacklock, "Osteomyelitis of the Skull Following Scalp Reduction and Hair Plug Transplantation," 5 Annals of Plastic Surgery 480–482 (Dec. 1980).

[9] See Stough, "Contemporary Techniques of Hair Replacement," Postgraduate Medicine, *supra* at 62; Salyer, "Hair Transplantation," 72 J. Tenn. Med. A., *supra* at 583.

undoubtedly improved petitioner's general well-being does not render the expense personal and thus nondeductible. Rather, since the expense is for a medical surgical procedure to correct a specific physiological condition, performed in accordance with usual physician practice, it is deductible under section 213 without the necessity of examining a taxpayer's motive for undergoing such treatment. In such context, we need not draw the fine line between medical and personal expenses. Accordingly, we hold that petitioner is allowed to deduct the cost of the hair transplant as a medical expense under section 213.

*Decision will be entered for the petitioner.*

---

[1]All section references are to the Internal Revenue Code of 1954 as amended and in effect.