T.C. Memo. 1997-198

UNITED STATES TAX COURT

GEORGE A. AND MARYSUE COWARD, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 22986-89.                    Filed April 30, 1997.

<u>Steven B. Jacobs</u>, for petitioners.

<u>Alan E. Staines</u>, for respondent.

MEMORANDUM OPINION

GOLDBERG, <u>Special Trial Judge</u>:  This case was assigned
pursuant to section 7443A(b)(4) and Rules 180, 181, and 183.[1]

Respondent determined deficiencies in, and additions to
petitioners' Federal income taxes as follows:

_____

[1]    Unless otherwise indicated, all section references are to
the Internal Revenue Code in effect for the years at issue.  All
Rule references are to the Tax Court Rules of Practice and
Procedure.

| | | Additions to Tax | | | Additional Interest |
| | | Sec. | Sec. | Sec. | Sec. | Sec. |
| Year | Deficiency | 6653(a) | 6653(a)(1) | 6653(a)(2) | 6659 | 6621(c) |
|---|---|---|---|---|---|---|
| 1975 | $ 4,847 | $242 | -- | -- | -- | |
| 1976 | 4,946 | 247 | -- | -- | -- | |
| 1977 | 6,576 | 329 | -- | -- | -- | |
| 1978 | 7,231 | 362 | -- | -- | -- | |
| 1979 | 6,789 | 339 | -- | -- | -- | |
| 1980 | 11,655 | 583 | -- | -- | -- | |
| 1981 | 13,081 | -- | $654 | [1] | $3,924 | |
| 1982 | 9,751 | -- | 488 | [1] | 2,925 | |

[1]  50 percent of the interest due to the underpayment of tax attributable to negligence or intentional disregard of rules and regulations.

[2]  120 percent of the interest due with respect to any substantial underpayment attributable to tax motivated transactions.

After concessions reflected in the Stipulation of Settled Issues, filed March 24, 1995,[2] the issue for decision is whether petitioners are entitled to an investment tax credit for the taxable year 1978, and, if so, in what amount, and whether they are entitled to any related carrybacks.  This case was submitted fully stipulated pursuant to Rule 122.  The stipulation of facts and the attached exhibits are incorporated herein by this reference.  Petitioners resided in Fair Oaks, California, at the

---

[2]     In their Stipulation of Settled Issues, the parties stipulated that, exclusive of the investment tax credit issue, there are deficiencies in petitioners' Federal income taxes as follows:

| Taxable Year | Deficiency |
|---|---|
| 1975 | $4,847 |
| 1976 | 4,946 |
| 1977 | 6,727 |
| 1978 | 1,495 |
| 1979 | 1,549 |
| 1980 | 9,043 |
| 1981 | 8,750 |
| 1982 | 3,468 |

The parties further stipulated that there are no additions to tax under secs. 6653(a), 6653(a)(1), 6653(a)(2), and 6659 for any of the years in issue, and that no part of the deficiencies is a substantial underpayment for the purposes of computing interest payable with respect to such amounts pursuant to sec. 6621(c) (formerly sec. 6621(d)).

time that they filed their petition. The pertinent facts are summarized below.

George Coward (petitioner) was an investor in Washoe Ranches #7 LTD. (the partnership), a limited partnership formed to engage in the business of breeding cattle. On December 20, 1978, Walter J. Hoyt III, as general partner, executed the Certificate and Articles of Limited Partnership for the partnership. Mr. Hoyt signed the limited partnership agreement on behalf of each of the limited partners including petitioner. The agreement stated that it was executed on January 1, 1978. The agreement was filed with the county of Washoe, Nevada.

The partnership agreement provided that each limited partner would contribute cash to partnership capital in the amount set forth after his name. No amount was shown on the agreement after any limited partner's name. On December 28, 1978, petitioner made his first and only capital contribution to the partnership for the taxable year 1978 in the amount of $500. The partnership records show that capital contributions to the partnership from the six limited partners totaled $2,750 for that taxable year, and all of the contributions were made on December 28, 1978. On March 18, 1979, petitioner signed an agreement to purchase 12 units of the partnership for $30,000 as his interest.

Under the terms of the partnership agreement, the general partner was not to contribute capital to the partnership. The general partner was responsible for managing the partnership. In

compensation, the general partner was to be allocated 15 percent of the partnership profits.

The partnership agreement in effect for 1978 provided that 85 percent of the profits, if any, of the partnership were allocable to the limited partners. Under the same agreement, 100 percent of the assets and losses of the partnership, if any, were to be allocated to the limited partners. Each limited partner's profit or loss sharing ratio was to be determined by dividing his total capital contributions by the total capital contributions received from all of the limited partners according to the terms of the agreement.

A livestock bill of sale was executed by Hoyt & Sons as seller, transferring cattle to the partnership, for a purchase price of $1,281,620. The bill of sale was dated January 15, 1978, and provided the following:

> the seller, signing hereunder and residing in the County of Harney State of Oregon, For valuable consideration in the amount of 1,281,620.00 Dollars [], The receipt whereof is hereby acknowledged [] and, by these presents, do[es] bargain and sell unto Washoe Ranches 7 LTD (Purchaser) the herein described livestock, * * * .

The following head of cattle were listed: 235 bred heifers, 1 heifer, 1 catch calf, 130 open heifers, and 1 open heifer.

Walter J. Hoyt III, as general partner, executed a promissory note payable to Hoyt & Sons in the principal amount of $1,281,620. Walter J. Hoyt III signed the note on behalf of the

partnership and on behalf of each of six limited partners, including petitioner, as attorney-in-fact.

The partnership filed a Form 1065, U.S. Partnership Return of Income, for the taxable year ending December 31, 1978. The return reports that the partnership started business on January 20, 1978. The Form 1065 shows total partnership capital of $3,100.

The Schedules K-1 attached to the partnership return allocated the total purchase price indicated on the January bill of sale as the basis of the cattle to the limited partners. The basis of new investment property with a life of 7 or more years was reported as $1,203,020. The cost of used investment property with a life of 7 or more years was reported as $78,600. The Schedules K-1 reflect the following partnership interests and allocations:

| Partner | Capital Account | Profit Sharing Ratio | Loss Sharing Ratio | Basis New Investment Property | Cost Used Investment Property |
|---|---|---|---|---|---|
| Daniel Gallagher | $250 | 7% | 8% | $ 65,500 | -0- |
| William Bingston | 500 | 20% | 23% | 337,800 | -0- |
| George Coward | 500 | 12% | 14% | 165,200 | -0- |
| John D. Gaskins | 500 | -- | -- | 222,800 | -0- |
| Bobby D. Chiles | 500 | -- | -- | 267,520 | -0- |
| Alonzo Corwin | 500 | 15% | 18% | 144,200 | 78,600 |
| W. Jay Hoyt III | 100 | 15% | -- | -- | -- |
| Totals | 2,850 | | | 1,203,020 | 78,600 |

Petitioner's sharing ratios were reported incorrectly on the Schedule K-1 for 1978. As of December 31, 1978, petitioner's correct share of partnership capital was 18.182 percent.

Petitioners claimed investment tax credit basis for new property with a life of 7 or more years in the amount of $165,200

as their distributive share of the partnership's investment tax credit basis on their Federal income tax return filed for 1978. Petitioners claimed an investment tax credit of $16,520 for the year. None of this amount was used to reduce petitioners' tax liability for the taxable year 1978. Petitioners carried back the investment tax credit to taxable years 1975, 1976, and 1977, in the amounts of $4,847, $4,946, and $6,727, respectively.

In the notice of deficiency, respondent determined that petitioners had not established that they were entitled to the claimed investment tax credit. Respondent disallowed the credit and carrybacks.

As an initial matter, on brief petitioners argue that our findings in Bales v. Commissioner, T.C. Memo. 1989-568, are binding on the parties to this action under the theory of collateral estoppel. That case involved certain limited partners who invested in partnerships formed by Walter J. Hoyt III, to engage in the business of breeding cattle.

Collateral estoppel is an affirmative defense which must be specifically pleaded. Rule 39. Collateral estoppel precludes litigation by parties or their privies, in a later suit on a different cause of action, of issues of fact and law actually litigated and necessarily decided by a court in reaching a prior judgment. United States v. Mendoza, 464 U.S. 154, 158 (1984). "Collateral estoppel may apply to matters of fact, matters of

law, or to mixed matters of law and fact." Brotman v. Commissioner, 105 T.C. 141, 148 (1995).

Respondent argues that petitioners improperly raised the collateral estoppel defense for the first time in their brief.

In their petition petitioners asserted the following:

The facts upon which the Petitioner relies as the basis of this case are as follows:
(a) The Petitioner is a Partner in a Partnership that is either involved in or is closely related to, seventeen Partnerships whose business activities for 1977, 1978, and 1979 are now before this court in a consolidated case entitled Bales v. Commissioner, Docket# 12479-82, * * *
(b) The stipulation of the parties, trial testimony, and briefs filed by the parties in the Bales case will provide this court with certain background facts about the petitioners' partnership business operations, ownership, cattle management agreements, and legal status that are not stated herein.

Petitioners' reference to Bales v. Commissioner, T.C. Memo. 1989-568, is clear, and we are aware that Bales was not yet decided at the time they filed their petition. However, we do not believe that the allegations contained in the petition constituted an affirmative pleading that any factual or legal issues decided in Bales were identical to those involved in this case for purposes of raising a defense of collateral estoppel. Thus, petitioners have not properly pleaded this defense, and therefore it is waived. Gustafson v. Commissioner, 97 T.C. 85, 90 (1991).

Assuming petitioners had properly raised the doctrine of collateral estoppel, petitioners bear the burden of proving this affirmative defense. Rules 39, 142(a); Calcutt v. Commissioner,

91 T.C. 14, 20-21 (1988). For collateral estoppel to apply, an issue litigated and decided in the previous action must be identical with the issue presently before the Court. Montana v. United States, 440 U.S. 147, 153 (1979); Peck v. Commissioner, 90 T.C. 162, 166-167, affd. 904 F.2d 525 (9th Cir. 1990). Petitioners have not established that the issue presented herein is identical to one of the issues presented in Bales v. Commissioner, supra.

The taxpayers in Bales v. Commissioner, supra, were partners in several limited partnerships which were organized by Walter J. Hoyt III to engage in the business of breeding cattle. The issues presented in that case included whether purchases of breeding cattle by those partnerships were bona fide transactions, and, if so, whether such purchases were eligible for the investment tax credit. The Court held: "Cattle are section 38 property and therefore eligible for the credit. Sec. 48(a)(6)." However, the transactions involving Washoe Ranches #7 LTD. were not before the Court in Bales v. Commissioner, supra. There is no dispute that cattle are section 38 property, and that purchases of cattle may be eligible for the investment tax credit. The issue in this case is whether cattle were acquired and placed in service by Washoe Ranches #7 LTD. in 1978. This issue is not identical to an issue litigated and decided in Bales v. Commissioner, supra. Nor has it been shown that petitioners are in privity with the taxpayers in Bales. Thus, respondent is

not collaterally estopped from litigating the issue presented for decision in this case. See also <u>Wolff v. Commissioner</u>, T.C. Memo. 1994-196.

In the alternative, petitioners request that we take judicial notice of our decision in <u>Bales v. Commissioner</u>, <u>supra</u>.

Rule 201 of the Federal Rules of Evidence, provides in part:

> (a) Scope of rule. This rule governs only judicial notice of adjudicative facts.
> (b) Kinds of facts. A judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.

We may take judicial notice of opinions of this Court, <u>Estate of Reis v. Commissioner</u>, 87 T.C. 1016, 1027 (1986), and do so in this case. However, "The mere fact that a court in one opinion makes findings of fact is not a basis for the same or another court in another proceeding to take judicial notice of those findings and deem them to be indisputably established for purposes of the pending litigation." <u>Id.</u> at 1028-1029. As we have noted, transactions involving Washoe Ranches #7 LTD. were not before the Court in <u>Bales</u>. The findings of facts in <u>Bales v. Commissioner</u>, <u>supra</u>, are not conclusive here.

Respondent's determination is presumed to be correct, and petitioners have the burden of proving entitlement to the claimed credit. Rule 142(a); <u>Welch v. Helvering</u>, 290 U.S. 111 (1933).

The burden of proof is not altered by submission of the case fully stipulated under Rule 122.  Rule 122(b).

Determining when a partnership is formed is a question of fact.  Sparks v. Commissioner, 87 T.C. 1279, 1282 (1986).  For Federal income tax purposes, a partnership comes into existence "`when the parties to a venture join together capital or services with the intent of conducting presently an enterprise or business.'"  Antonides v. Commissioner, 91 T.C. 686, 698 (1988), (quoting Sparks v. Commissioner, supra at 1282), affd. 893 F.2d 656 (4th Cir. 1990).  A partnership is deemed to be formed as of the date that the first parties to the venture acquired their respective capital interests in such partnership.  Sparks v. Commissioner, supra at 1283.  To qualify as a partner, each party must contribute capital or services to the partnership.  Id.

In determining a partner's investment tax basis with respect to partnership property, the regulations provide:  "each partner shall take into account separately, * * *, his share of the basis of partnership new section 38 property and his share of the cost of partnership used section 38 property placed in service by the partnership during such partnership taxable year."  Sec. 1.46-3(f)(1), Income Tax Regs.  As a general rule "Each partner's share of the basis (or cost) of any section 38 property shall be determined in accordance with the ratio in which the partners divide the general profits of the partnership".  Sec. 1.46-3(f)(2)(i), Income Tax Regs.

Section 48(b) defines "new section 38 property" as section
38 property "acquired after December 31, 1961, if the original
use of such property commences with the taxpayer".  Section 38
property acquired by purchase that is not new section 38 property
is considered "used section 38 property."  Sec. 48(c).  The
original use of property is "the first use to which the property
is put, whether or not such use corresponds to the use of such
property by the taxpayer."  Sec. 1.48-2(b)(7), Income Tax Regs;
see Baicker v. Commissioner, 93 T.C. 316, 322 (1989).  The amount
of the investment tax credit may depend on whether the section 38
property is new or used within the meaning of section 48.  Sec.
48(c)(2).[3]  Property generally is "placed in service" in the year
in which such property is "placed in a condition or state of
readiness and availability for a specifically assigned function".
Sec. 1.46-3(d), Income Tax Regs.

In this case, the evidence indicates that the partnership
came into existence for Federal tax purposes as of December 28,
1978, the date on which the limited partners made capital
contributions to the partnership.  Up until that time, the
partnership was without capital and could not conduct business.
Although the partnership agreement was entered into on December

---

[3]    For tax year 1978, sec. 48(c)(2)(A) provides:  "The cost of
used section 38 property taken into account under section
46(c)(1)(B) for any taxable year shall not exceed $100,000."
This limitation applies at the partnership level and at the
partner level.  Sec. 48(c)(2)(D).

20, 1978, the amount of capital which each partner was to contribute to the partnership was left blank.

Respondent argues that because the partnership did not exist at the time of the cattle purchase, the partnership could not have engaged in the purchase and thus had no basis in the cattle. Therefore, respondent argues petitioner received no distributive share of basis in such cattle upon which petitioners can claim an investment tax credit. Petitioners counter that the cattle purchase was part of the pre-operating activities engaged in by Walter J. Hoyt III as general partner. Petitioners argue that the partnership became a party to the transaction on formation.[4]

We find petitioners' argument persuasive. Walter J. Hoyt III was purporting to act on behalf of Washoe Ranches #7 LTD. when he entered into the cattle purchase. Washoe Ranches #7 LTD. became a party to the transaction in December 1978 when the partnership accepted the cattle received as a result of the purchase,[5] and the partnership expressly accepted liability for

---

[4]     Petitioners rely on California law in support of their argument. We do not understand California law to govern in this case as the record indicates that the partnership was formed as a Nevada limited partnership, the partnership agreement was filed with the county of Washoe, Nevada, and the principal offices of the partnership were located in Nevada. Nothing in the record indicates that the partnership carried on its operations in California. However, we are persuaded that petitioners' position is consistent with Nevada law.

[5]     The Supreme Court of Nevada has held that such acceptance of the benefits of the transaction constitutes ratification of the contract. See, e.g., European Motors, Ltd. v. Oden, 344 P.2d 195, 197 (Nev. 1959). The Second Restatement of Agency

the purchase price thereof.  Thus, the partnership acquired the cattle by purchase, and the partnership, therefore, had basis in the cattle equal to the cost.  Sec. 1012.

Respondent next argues that petitioners have failed to establish when the cattle were placed in service.  Petitioners argue that it is not significant when the cattle were placed in service if it occurred within the taxable year 1978.

Upon consideration, we are not persuaded by either argument in its entirety.  The majority of the cattle was identified as bred heifers, meaning these cows had been impregnated.  The average gestation period of cattle is approximately 9 to 10 months.[6]  There is nothing in the record indicating what happened to the cattle during the 11 months between the sale by Hoyt & Sons and the acquisition of the cattle by the partnership for its breeding operations.  However, given the considerable passage of time, some, if not all, of the bred heifers must have given birth during this time, and we believe this activity constitutes

---

characterizes such acceptance as an adoption.  See Restatement, Agency 2d, sec. 104 & comment (a) (1958).  For these purposes, the labels are not significant.

[6]    The average gestation period for cattle is 284 days, with a variation range of 260-300 days.  See 5 New Encyclopedia Britannica, Gestation 227 (15th ed. 1993).  "It is generally accepted that courts may take judicial notice of scientific facts which are commonly known and which may be found in encyclopedias, dictionaries, or other publications."  Mattes v. Commissioner, 77 T.C. 650, 653 n.3 (1981).

original use within the meaning of section 48.[7]  Thus, petitioners have failed to establish that the original use of these bred heifers commenced with the partnership.  Therefore, by definition they are deemed to be used section 38 property when the partnership acquired them.

Based on the record, we find that the cattle were placed in service by the partnership on December 28, 1978.  The cows, the majority of which had already been bred, were in a state of readiness for their assigned function of breeding.  Petitioner was a partner in the partnership at that time, and thus petitioners are entitled to a distributive share of the investment tax credit basis and cost for the purchase of the cattle.[8]  For these purposes, the partnership's cost of the bred heifers is limited to $100,000.  Sec. 48(c)(2).

---

[7]      In determining whether livestock acquired by a taxpayer is new or used property for purposes of the credit, the committee intends that livestock be treated in a manner consistent with that provided in the Treasury regulations for other types of property.  Property is considered new property for purposes of the credit if its original use commences with the taxpayer.  The regulations provide that the term "original use" means the first use to which property is placed, whether or not the use corresponds to the use of the property by the taxpayer.  However, where the property qualifies as a breeding or dairy animal, it will normally be regarded as a new article at the time it is first used for these purposes, that is, at the time its suitability is established by the bearing of a calf or the giving milk, assuming it has not been used for other purposes prior to that time.
S. Rept. 92-437 at 33, (1971), 1972-1 C.B. 559, 577.

[8]    Petitioner's sharing ratio is based upon his profits-sharing ratio, 85 percent of 18.182 percent or 15.455 percent.

We have considered all arguments by the parties, and, to the extent not discussed above, find them to be irrelevant or without merit.

To reflect the foregoing,

<u>Decision will be entered under Rule 155</u>.